IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

WALHONDE TOOLS, INC.,

      Plaintiff,

      v.

WILSON WORKS, INC., a West Virginia
corporation, NORTHCO CORP., a
West Virginia corporation, NAES POWER
CONTRACTORS, INC., a successor by
merger to American Boiler & Chimney
Company, a Washington corporation,
MINNOTTE CONTRACTING
CORPORATION, a Pennsylvania
corporation, FOSTER WHEELER ZACK,
INC., a Delaware corporation, DAY &
ZIMMERMAN NPS, INC., a Delaware
corporation,

      Defendants.

Civil Action No. 1:09-CV-48

Honorable Irene M. Keeley

## DEFENDANT WILSON WORKS, INC.'S MARKMAN BRIEF

JAMES A. WALLS
Spilman Thomas & Battle, PLLC
48 Donley Street, Suite 800
P.O. Box 615
Morgantown, WV 26507-0615
Phone: (304) 291-7920
Facsimile: (304) 291-7979

RICHARD W. JAMES
Spilman Thomas & Battle, PLLC
One Oxford Centre, Suite 3440
301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 325-3309
Facsimile: (412) 325-3324

*Attorneys for Defendant
Wilson Works, Inc.*

# TABLE OF CONTENTS

Page

I.   BACKGROUND ................................................................................ 6

II.  APPLICABLE LAW ON CLAIM CONSTRUCTION ......................... 7

III. THE CLAIM TERMS .................................................................... 10

    A.  Claim 1 ................................................................................ 12

        1.  "adjacent ends of a boiler wall tube" ............................. 13

        2.  "on opposite sides of a juncture" .................................. 14

        3.  "periphery" ................................................................. 15

        4.  "one of said clamp members including a threaded bore extending therethrough" ................................................................ 14

            a.  "threaded bore" .................................................. 16

            b.  "extending therethrough" .................................... 16

        5.  "said bolt means including a single bolt" ...................... 17

    B.  Claim 2 ................................................................................ 18

    C.  Claim 4 ................................................................................ 19

        1.  "single recess" ............................................................ 20

        2.  "single boiler wall tube" .............................................. 20

        3.  "said bolt means including a pair of bolts extending centrally through said claim members and between adjacent boiler wall tubes at the juncture between adjacent ends of the pair of boiler wall tubes" ........ 21

    D.  Claim 7 ................................................................................ 22

    E.  Claim 8 ................................................................................ 22

    F.  Claim 10 .............................................................................. 22

1.    "adjacent ends of a pair of boiler wall tubes" .................................. 23

IV.    CONCLUSION ....................................................................................... 23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Apple Computer, Inc. v. Articulate Systems, Inc.*
234 F.3d 14, 25 (Fed.Cir.2000) ........................................................................22

*B. Braun Med., Inc. v. Abbott Lab.*
124 F.3d 1419, 1424 (Fed. Cir. 1997) ..............................................................11

*Bai v. L & L Wings, Inc.*
48 U.S.P.Q.2d 1674, 1678 (Fed. Cir. 1998) ...............................................12,13

*Blackboard, Inc. v. Desire2Learn, Inc.*
574 F.3d 1371, 1373 (Fed. Cir. 2009) ..............................................................13

*C.R. Bard, Inc. v. U.S. Surgical Corp.*
388 F.3d 858, 862 (Fed. Cir. 2004) ..................................................................10

*Carman Industries, Inc. v. Wahl*
220 U.S.P.Q. 481, 489 (Fed. Cir. 1983) ...........................................................12

*Charles Greiner & Co. v. Mari-Med Mfg. Inc.*
22 U.S.P.Q.2d 1526 (Fed. Cir. 1992) ...............................................................12

*Datamize, LLC v. Plumtree Software, Inc.*
417 F.3d 1342, 1356 (Fed. Cir. 2005) ..............................................................13

*EMI Group N. Am., Inc. v. Intel Corp.*
157 F.3d 887, 892 (Fed. Cir. 1998) ..................................................................11

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.,*
64 F.3d 1553 (Fed. Cir. 1996) ..........................................................................22

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
535 U.S. 722, 739-40 (2002) ......................................................................13,15

*Halliburton Energy Services, Inc. v. M-I LLC*
514 F.3d 1244, 1247 (Fed. Cir. 2008) ..............................................................14

*Harris Corp. v. IXYS Corp.*
114 F.3rd 1149, 1152 (Fed.Cir.1997) ...............................................................22

*Haynes International Inc. v. Jessup Steel Co.*
28 U.S.P.Q.2d 1652 (Fed. Cir 1993); ...............................................................12

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,*
    381 F.3d 1111, 1115 (Fed. Cir. 2004) .................................................................. 9

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*
    430 F.3d 1377, 1379-81 (Fed. Cir. 2005) ........................................................... 22

*JVW Enterprises, Inc. v. Interact Accessories, Inc.*
    424 F.3d 1324, 1330 (Fed. Cir. 2005) ............................................................... 11

*Loctite Corp. v. Ultraseal Ltd.*
    781 F.2d 861, 871 (Fed. Cir. 1985) .................................................................... 12

*Mantech Envtl. Corp. v. Hudson Envtl. Servs.*
    152 F.3d 1368, 1373 (Fed. Cir. 1998) ............................................................... 11

*Markman v. Westview Instruments, Inc.*
    52 F.3d 967 (Fed. Cir. 1995) ........................................................... 8,10,11,13

*Merrill v. Yeomans*
    94 U.S. 568, 570 (1876) ..................................................................................... 9

*NetMoneyIN, Inc. v. Verisign, Inc.*
    545 F.3d 1359, 1366-67 (Fed. Cir. 2008) ......................................................... 13

*Omega Eng'g, Inc. v. Raytek Corp.*
    334 F.3d 1314, 1322 (Fed. Cir. 2003) ............................................................... 11

*Phillips v. AWH Corp.*
    415 F.3d 1303 (Fed. Cir. 2005) ..................................................................... 9,10

*Senmed, Inc. v. Richard-Allen Medical Industries, Inc.*
    12 U.S.P.Q.2d 1508, 1513 (Fed. Cir. 1989) ..................................................... 12

*Standard Oil Co. v. Am. Cyanamid Co.*
    774 F.2d 448, 452 (Fed. Cir. 1985) .................................................................... 10

*Thomas & Betts Corp. v. Litton Systems, Inc.*
    1580, 220 U.S.P.Q. 1, 6-7 (Fed. Cir. 1983) ...................................................... 12

*Tivo, Inc. v. EchoStar Communications Corp.*
    516 F.3d 1290, 1303 (Fed. Cir. 2008) ............................................................... 22

*Vitronics Corp. v. Conceptronic, Inc.*
    90 F.3d 1576 (Fed. Cir. 1996) ..................................................................... 9,10,11

*Wilson Sporting Goods Co. v. David Geoffrey & Associates*
    14 U.S.P.Q.2d 1942 (Fed. Cir. 1990) ...................................................................12

## MISCELLANEOUS

U.S. Patent No. 4,936,500 ............................................................... EXHIBIT A

U.S. Patent No. 2,612,821 ............................................................... EXHIBIT B

U.S. Patent No. 2,590,004 ............................................................... EXHIBIT C

U.S. Patent No. 3,596,898 ............................................................... EXHIBIT D

U.S. Patent No. 4,195,828 ............................................................... EXHIBIT E

Office Action for U.S. Patent No. 5,481,793 dated March 27, 1995 ................ EXHIBIT F

Office Action Response for U.S. Patent No. 5,481,793 dated June 9, 1995 ..... EXHIBIT G

Merriam-Webster, *Merriam-Webster Online*, Merriam-Webster Inc., 2010,
September 1, 2010 ........................................................................ EXHIBIT H

Office Action and Response for U.S. Patent No. 4,936,500 ............................... EXHIBIT I

This Markman Brief addresses claims 1-8 and 10 of the patent-in-suit—U.S. Patent 4,936,500 ("'500 Patent"). [Ex. A].[1] Various claim terms especially relevant to establishing noninfringement are discussed below. Claim terms not specifically addressed below are construed in Appendix I filed contemporaneously herewith.

## I.   **BACKGROUND**

The '500 Patent relates to a clamp used with boiler wall tubes. The clamp employs many elements long known. *See generally, e.g.,* U.S. Patent 2,612,821 to Skay ("Skay") [Ex. B]; U.S. Patent No. 2,590,004 to Givens ("Givens") [Ex. C]; and U.S. Patent No. 3,596,898 to Hilburn ("Hilburn") [Ex. D]. Prior clamp designs such as in Skay individually disclosed many elements of the '500 Patent claims including, for example, a pair of opposed clamp members with each clamp member having a pair of recesses therein, means moving the clamp members towards each other for secure clamping and including bolt means with a single, headed bolt extending centrally through the clamp members and having a threaded end portion, the bolt means connecting the clamp members to move the clamp members towards each other and enable the clamp members to be moved away from each other and to be separated. Furthermore, boiler wall tubes and bolts extending into threaded bores have been common knowledge in clamp technology. *See generally, e.g.,* U.S. patent 4,195,828 to Peterson [Ex. E] and Givens [Ex. C].

The claims at issue in the '500 Patent recite very specific features and should be interpreted narrowly with the understanding that many prior clamp designs were in existence before the '500 Patent underlying application was filed. For example, independent claims 1 and 10, the independent claims for which full contentions were provided, recite a *single bolt* received in a *bore with threads extending through one of the clamp members* and a clamp in active

---

[1] The notations "Ex. [#]" refer to the exhibits attached hereto.

engagement with boiler wall tubes, which are absent from all clamps made by Wilson Works. The claims are further narrowed by their numerous means-plus-function clauses as well as the significant amendments made to them during prosecution that trigger prosecution history estoppel.

## II.    APPLICABLE LAW ON CLAIM CONSTRUCTION

In *Phillips v. AWH Corp.*, the Federal Circuit emphasized the importance of focusing on the precise language of the claims and the intrinsic record in determining the extent of the plaintiff's monopoly. 415 F.3d 1303 (Fed. Cir. 2005). The court stressed, "[it] is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Id.* at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). "The claims are 'of primary importance, in the effort to ascertain precisely what it is that is patented.'" *Id.* (quoting *Merrill v. Yeomans*, 94 U.S. 568, 570 (1876)).

Words of a claim "are generally given their ordinary and customary meaning" as understood by a person of ordinary skill in the art as of the effective filing date of the patent application. *Phillips*, 415 F.3d at 1312-13 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *see also Innova*, 381 F.3d at 1116. The court may look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Phillips*, 415 F.3d at 1314 (quoting *Innova*, 381 F.3d at 1116). Those sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.*

"The claims, of course, do not stand alone. Rather they are part of a fully integrated written instrument, consisting principally of a specification that concludes with the claims. For that reason, claims 'must be read in view of the specification, of which they are a part.'" *Id.* at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978-79 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics*, 90 F.3d at 1582). "The specification is, thus, the primary basis for construing the claims." *Id.* (quoting *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)).

"In addition to consulting the specification . . . a court 'should also consider the patent's prosecution history, if it is in evidence.'" *Phillips*, 415 F.3d at 1317 (quoting *Markman*, 52 F.3d at 980). Like the specification, the prosecution history was created by the patentee in attempting to explain and obtain the patent." *Id.* The prosecution history of a patent's parent application may also be considered. *Jonsson v. Stanley Works*, 903 F.2d 812, 818 (Fed. Cir. 1990).

Although the Federal Circuit has emphasized the importance of intrinsic evidence in claim construction, the Federal Circuit has also authorized district courts in some circumstances to consider extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317 (quoting *Markman*, 52 F.3d at 980). However, while extrinsic evidence "can shed useful light on the relevant art," the Federal Circuit has explained that it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004). In those cases where the intrinsic evidence unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper since the public is entitled to

rely upon the public record. *See Mantech Envtl. Corp. v. Hudson Envtl. Servs.*, 152 F.3d 1368, 1373 (Fed. Cir. 1998). While extrinsic evidence may be considered *if needed* to assist in determining the meaning or scope of technical terms in the claims, *Vitronics Corp.*, 90 F.3d at 1583, it cannot be used to contradict the established meaning of the claim language. *Mantech*, 152 F.3d at 1373. Thus, the use of expert or inventor testimony, which may be helpful to explain scientific principles, the meaning of technical terms, and terms of art that appear in the patent and prosecution history, must be used only for the purpose of understanding the patent and not for the purpose of varying or contradicting the terms of the claim. *Markman*, 52 F.3d at 981; *EMI Group N. Am., Inc. v. Intel Corp.*, 157 F.3d 887, 892 (Fed. Cir. 1998).

Patent claims may include "means for . . ." language, in which case, 35 U.S.C. § 112(6) applies:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claims shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Where claims are written in a "means-plus-function" format pursuant to 35 U.S.C. §112(6), a two-step analysis is used to construe their meaning. "First, we determine the claimed function. Second, we identify the corresponding structure in the written description that performs that function." *JVW Enterprises, Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 (Fed. Cir. 2005) citing *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322 (Fed. Cir. 2003). "Structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *B. Braun Med., Inc. v. Abbott Lab.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997).

The range of equivalents cannot be so broad as to include subject matter within or obvious in view of the prior art. *Wilson Sporting Goods Co. v. David Geoffrey & Associates*, 14 U.S.P.Q.2d 1942 (Fed. Cir. 1990). Limitations in a claim cannot be given a range of equivalents so wide as to cause the claim to encompass anything in the prior art. *Senmed, Inc. v. Richard-Allen Medical Industries, Inc.*, 12 U.S.P.Q.2d 1508, 1513 (Fed. Cir. 1989). See also *Thomas & Betts Corp. v. Litton Systems, Inc.*, 1580, 220 U.S.P.Q. 1, 6-7 (Fed. Cir. 1983) (claims should be given a range of equivalents narrow enough to distinguish over the prior art and thus to avoid invalidity.); *Carman Industries, Inc. v. Wahl*, 220 U.S.P.Q. 481, 489 (Fed. Cir. 1983) (proposed construction under the doctrine of equivalents cannot render claims invalid in view of the prior art).

Under the doctrine of prosecution history estoppel, when a patent owner seeks to invoke the doctrine of equivalents, the prosecution history of the patent must be evaluated to see whether the patent owner is attempting to impermissibly recapture subject matter that has already been acknowledged to be unpatentable over the prior art. See also: *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 871 (Fed. Cir. 1985); *Haynes International Inc. v. Jessup Steel Co.*, 28 U.S.P.Q.2d 1652 (Fed. Cir 1993); *Charles Greiner & Co. v. Mari-Med Mfg. Inc.*, 22 U.S.P.Q.2d 1526 (Fed. Cir. 1992). File history estoppel is a judicially accepted limitation to the doctrine of equivalents, under which a patent owner cannot recapture through equivalence certain coverage given up by argument or amendment during prosecution. Hormone Research Foundation, Inc. at 1564. A patentee cannot prevent operation of prosecution history estoppel by arguing that an amendment to the claims, made in response to a prior art rejection, was not actually necessary to overcome that rejection, because the patentee is not entitled to amend the claims to overcome a rejection and then challenge its necessity in a subsequent infringement action. *Bai v. L & L*

*Wings, Inc.*, 48 U.S.P.Q.2d 1674, 1678 (Fed. Cir. 1998). Additionally, under the case, *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 739-40 (2002), an amendment that narrows the scope of a claim for a reason related to the statutory requirements for a patent, will give rise to prosecution history estoppel.

The Patent Statute also sets forth the requirement for "particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 ¶2. A single indefinite limitation invalidates an entire claim. *NetMoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1366-67 (Fed. Cir. 2008). In addition, because a dependent claim effectively incorporates the limitations of the independent claim from which it depends, an indefinite limitation in an independent claim also invalidates all of that claim's dependent claims. *See, e.g., Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1356 (Fed. Cir. 2005) ("'Aesthetically pleasing,' as it is used in the only independent claim of [the patent-in-suit], fails to 'particularly point[ ] out and distinctly claim [ ] the subject matter which the patentee regards as his invention' . . . . We therefore affirm the district court's grant of summary judgment of invalidity of all claims . . . .").

The question of claim indefiniteness is a legal conclusion, which is "drawn from the court's duty as the construer of patent claims." *Datamize*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). Courts may address the asserted indefiniteness of claim limitations during claim construction. *See, e.g., NetMoneyIN*, 545 F.3d at 1364. The reason is logical – if a claim limitation is indefinite, it is incapable of having a construction. When that happens, courts may grant summary judgment of invalidity of such claims in their claim construction orders. *See, e.g., Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1373 (Fed. Cir. 2009) ("After a *Markman* hearing, the district court entered partial summary judgment for Desire2Learn, holding claims 1-

35 of the patent invalid for indefiniteness."); *Halliburton Energy Services, Inc. v. M-I LLC*, 514

F.3d 1244, 1247 (Fed. Cir. 2008).

## III.   THE CLAIM TERMS

During prosecution of the underlying application to the '500 Patent, the inventor, through

his attorney, filed an Amendment with the U.S. Patent and Trademark Office ("USPTO") on

December 18, 1989 in response to the USPTO Examiner's rejection of the claims in the

application over certain prior art.  [Ex. I]  In the Amendment, independent Claims 1 and 7

(original 10) were changed as follows, with the underlined portions indicating the language that

was added to each claim.  *See id.* at pages 2, 4, and 8.  The amended terms are thus not eligible

for any equivalents.

Claims 1 and 7 are amended as follows:

1.     (Amended)  A boiler wall tube tool comprising a pair of opposed clamp
members with each clamp member including at least one recess therein to engage
adjacent ends of a boiler wall tube on opposite sides of a juncture between the
adjacent ends, means moving the clamp members towards each other for secure
clamping engagement <u>with adjacent ends</u> of the tube for maintaining them in
alignment while connecting the ends of the tube by welding, each clamp member
including means providing access to the periphery of the juncture between the
ends of the tube clamped by the clamp members, said means moving the clamp
members towards each other including bolt means connecting said clamp
members for moving the clamp members towards <u>each other</u> and <u>enabling the
clamp members to be moved</u> away from each other <u>and to be separated, said bolt
means including a headed bolt having a threaded end portion, one of said clamp
members including a threaded bore extending therethrough for threadably
receiving the threaded portion of the bolt with the headed end of the bolt engaging
the other clamp member to enable the clamp members to be securely clamped to
the adjacent ends of the tube to retain the adjacent ends of the tube in secure
alignment, each of said clamp members having a pair of recesses therein receiving
adjacent ends of a pair of boiler wall tubes, said bolt means including a single bolt
extending centrally through said clamp members and between the pair of boiler
wall tubes at the juncture between adjacent ends of the boiler wall tubes.</u>

7.     (Amended)  In combination with a boiler tube wall formed by a plurality
of closely spaced tubes rigidly connected by webs, a tool for clampingly engaging
adjacent ends of a tube from which the connecting webs have been removed and

retaining the adjacent tube ends in alignment while being connected by welding, said tool comprising a pair of opposed clamp members with each clamp member including recess means therein to engage adjacent ends of at least one boiler wall tube on opposite sides of a juncture between the adjacent <u>tube</u> ends, means moving the clamp members towards each other for secure clamping engagement [of] <u>with only</u> the adjacent ends of the tube for maintaining them in alignment while connecting the ends of the tube by welding, each clamp member including means providing access to the periphery of the juncture between the ends of the tube clamped by the clamp members, said means moving the clamp members towards each other including bolt means <u>extending between the tubes in the areas from which the webs have been removed</u>.

In addition, new independent Claim 10 was added by the December 18, 1989

Amendment:

10.     A boiler wall tube tool comprising a pair of opposed clamp members with each clamp member including a pair of longitudinal recesses therein to receive and engage adjacent ends of a pair of boiler wall tubes on opposite sides of a juncture between the adjacent ends, bolt means moving the clamp members towards each other for secure clamping engagement of the adjacent ends of a pair of boiler wall tubes for maintaining them in alignment while connecting the ends of the tubes by welding, each clamp member including means providing access to the periphery of the juncture between the adjacent ends of the pairs of tubes clamped by the clamp members, said bolt means including a single bolt extending centrally through said clamp members and between the pair of boiler wall tubes at the juncture between adjacent ends of the boiler wall tubes, said means providing access to the periphery of the juncture between the adjacent ends of the tubes including a laterally inwardly extending centrally disposed recess in each side edge of each clamp member in alignment with the juncture between the adjacent ends of the pair of tubes thereby providing access to a substantial portion of the periphery of the adjacent ends of the pair of tubes both interiorly and exteriorly of the boiler wall formed by the tubes, the headed end of the single bolt engaging the outer clamp member thereby rendering the head of the bolt available for engagement by a wrench exteriorly of the boiler wall formed by the tubes.

To the extent the claims of the '500 Patent were amended during prosecution to obtain

their allowance by the USPTO Examiner, the Plaintiff cannot now attempt to recapture the

subject matter it surrendered. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535

U.S. 722, 740 (2002).

A.     **Claim 1**

The following terms of claim 1 of the '500 Patent are independently relevant to

establishing noninfringement.  Those terms are emphasized below in claim 1, which recites:

> 1. A boiler wall tube tool comprising a pair of opposed clamp members with each
> clamp member including at least one recess therein to engage **adjacent ends of a**
> **boiler wall tube on opposite sides of a juncture** between the adjacent ends,
> means moving the clamp members towards each other for secure clamping
> engagement with adjacent ends of the tube for maintaining them in alignment
> while connecting the ends of the tube by welding, each clamp member including
> **means providing access to the periphery of the juncture between the ends of**
> **the tube clamped by the clamp members**, said means moving the clamp
> members towards each other including bolt means connecting said clamp
> members for moving the clamp members towards each other and enabling the
> clamp members to be moved away from each other and to be separated, said bolt
> means including a headed bolt having a threaded end portion, **one of said clamp**
> **members including a threaded bore extending therethrough** for treadably
> receiving the threaded portion of the bolt with the headed end of the bolt engaging
> the other clamp member to enable the clamp members to be securely clamped to
> the adjacent ends of the tube to retain the adjacent ends of the tube in secure
> alignment, each of said clamp members having a **pair of recesses therein**
> **receiving adjacent ends of a pair of boiler wall tubes**, **said bolt means**
> **including a single bolt** extending centrally through said clamp members and
> between **the pair of boiler wall tubes at the juncture between adjacent ends of**
> **the boiler wall tubes**.

[Ex. A (emphasis added)].

Where the highlighted terms and clauses above appear in other claims at issue in the '500

Patent, the construction of those terms is assumed to be the same unless otherwise indicated.

1.     **"adjacent ends of a boiler wall tube"**

By its plain language, the clause "adjacent ends of a boiler wall tube" means "a single

tube having two ends that are close to each other." Figure 1 shows multiple boiler wall tubes,

one of which is labeled with the reference number 16 and is the tube at the lower right corner.

Other boiler wall tubes (unnumbered) are also present, including the one at the upper right corner

positioned close to the aforementioned boiler wall tube 16. Figure 1 shows the top end of the

boiler wall tube 16, but not the bottom end, since that part of that tube is cut off of the figure.

Those ends of the tube, as with any ends of a straight element like the boiler wall tube 16, are not adjacent but remote. Thus, the clause "adjacent ends of a boiler wall tube" is nonsensical and invalid for indefiniteness.

In fact, during prosecution of U.S. Patent No. 5,481,793 ("'793 Patent"), another patent for a boiler wall tube tool with the same inventor (Gary McClure) as in the '500 Patent, the Patent Office Examiner rejected the limitation, "adjacent ends...[of a boiler wall tube]" of claim 1 as indefinite under 35 U.S.C. §112, second paragraph. *See* [Ex. F at page 3]. Specifically, the Examiner stated that "'adjacent ends' is indefinite (i.e. ends of what?)." *Id.* In response, that claim was amended to, *inter alia*, add "segments" such that the aforementioned clause now read, as amended, "adjacent ends...[of boiler wall tube] segments." *See* [Ex. G at page 1]. That response confirmed that the amendments to the claims were made "to avoid the rejection under 35 U.S.C. §112, second paragraph" for indefiniteness. *See id.* at page 9.

Notwithstanding the nonsensical and invalidating language in the '500 Patent claim 1 that the two ends of the tube are "adjacent" and thus close to each other, the language is clear. That is, the claim states that those two ends of a boiler wall tube—and thus *not* a boiler wall tube "segment"—are "adjacent" as defined above.

Dictionary definitions support that definition. For example, Collins English Dictionary defines "adjacent" as "not distant: nearby." *See Merriam-Webster Online*, Merriam-Webster Inc., 2010, http://www.merriam-webster.com/dictionary/adjacent. [Ex. H].

2.    "<u>on opposite sides of a juncture</u>"

By its plain language, the clause "on opposite sides of a juncture" between the adjacent ends means "on opposite sides of a point of connection" between those adjacent ends. As discussed above, the adjacent ends are ends that are close to each other. A "juncture" is, by its plain language, a point at which two bodies are joined, and thus a point of connection. A

juncture is shown, for example, in Figure 1 of the '500 Patent by reference number 52, though that juncture is positioned to connect two different boiler wall tubes (one labeled 16) as opposed to one boiler wall tube as recited in the claims. Thus, the juncture 52 as used in claim 1 cannot be a point of connection between adjacent ends of a boiler wall tube because those adjacent ends are remote. Thus, the clause "on opposite sides of a juncture" is nonsensical and invalid for indefiniteness.

As in the previous section, prosecution of the relevantly similar '793 Patent rejected that nonsensical construction. Specifically, the Patent Office Examiner rejected the limitation "the juncture of a boiler wall tube" of claim 1 as indefinite under 35 U.S.C. §112, second paragraph. *See* [Ex. F at page 3]. The Examiner stated that "It is unclear how a single boiler wall tube can form a juncture." *Id.* In response, that claim was amended to, *inter alia*, remove the term "juncture." *See* [Ex. G at page 1]. That response confirmed that the amendments to the claims were made "to avoid the rejection under 35 U.S.C. §112, second paragraph" for indefiniteness. *See* [Ex. G at page 9].

Notwithstanding the nonsensical and invalidating language in the '500 Patent claim 1 that those "opposite sides of a juncture" are located between the ends of a boiler wall tube, the language of the claim is clear. Nothing in the claims, specification, or prosecution history suggests the limitation "juncture" or any other word or phrase in the clause at issue carries any meaning other than its ordinary and customary meaning..

Dictionary definitions support that definition. For example, Merriam-Webster's online dictionary defines a "juncture" as a "joint, connection." *See Merriam-Webster Online*, Merriam-Webster Inc., 2010, http://www.merriam-webster.com/dictionary/juncture. [Ex. H].

3.   **"means providing access to the periphery of the juncture between the**
**ends of the tube clamped by the clamp members"**

The term "each clamp member including means providing access to the periphery of the

juncture between the ends of the tube clamped by the clamp members" is a means-plus-function

term and must be construed in accordance with 35 U.S.C. § 112(6).  The function is "to provide

access to the perimeter of a closed curve of the point of connection between the tube ends that

are close to each other, the tube ends clamped by the clamp members."


However, no structure or structural equivalent shown or described in the '500 Patent corresponds

to the aforementioned function.  The clause is therefore indefinite and invalidates claim 1.

Specific terms of the clause are addressed below.

a.   "periphery"

By its plain language, the limitation "periphery" means "perimeter of a closed curve."

Nothing in the claims, specification, or prosecution history suggests the limitation "periphery" or

any other word or phrase in the clause at issue carries any meaning other than its ordinary and

customary meaning.  In fact, this term appears nowhere outside of the claims.

The word "periphery" is not used in the '500 Patent outside of the claims.  Thus, there is

no intrinsic support for that word.

Dictionary definitions support the aforementioned definition.  For example, Merriam-

Webster's online dictionary defines a "periphery" as "the perimeter of a circle or other closed

curve."  *See Merriam-Webster Online*, Merriam-Webster Inc., 2010, http://www.merriam-

webster.com/dictionary/periphery.  [Ex. H].

      b.     <u>"of the juncture between the ends of the tube clamped by the clamp members"</u>

By its plain language, the limitation "of the juncture between the ends of the tube clamped by the clamp members" means "of the point of connection between the tube ends that are close to each other, the tube ends clamped by the clamp members." The term "juncture" has been constructed above as "point of connection." The "ends of the tube" apparently refers back to the adjacent ends of a single tube appearing earlier in the claim and is thus constructed as, in accordance with the discussion above, "the tube ends that are close to each other." As discussed above, the tube ends are remote, and thus no point of connection exists—or can exist—between those tube ends. This limitation in the means-plus-function clause thus cannot be achieved and renders the clause and claim 1 indefinite and invalid.

    **4.**     **<u>"one of said clamp members including a threaded bore extending therethrough"</u>**

By its plain language, the clause "one of said clamp members including a threaded bore extending therethrough" means that "one of the clamp members has a hole with its boundary defined by threading, the hole and its threading cut into the clamp member and extending from one side to the other." Nothing in the claims, specification, or prosecution history suggests the limitations "bore," "threaded," "therethrough" or any other word or phrase in the clause at issue carries any meaning other than its ordinary and customary meaning. That clause is broken down into specific key terms below to further clarify the construction of the clause.

      a.     <u>"threaded bore"</u>

By its plain language, a "threaded bore" is a "hole with its boundary defined by threading, the hole and its threading cut into the clamp member." Figure 2 of the '500 Patent illustrates the threaded bore at reference number 64 in the single bolt embodiment claimed in

claim 1. (See also col. 3, lines 34-36). As shown in Figure 1, a threaded hole has been cut into the clamp and has threads extending from one end side of the clamp to the other, and thus its boundary is defined by the threading. The threads accommodate the threaded portion 62 of the clamp bolt 32 in that Figure.

Dictionary definitions support those definitions. For example, Merriam-Webster's online dictionary defines a bore as "a usually cylindrical hole made by or as if by boring," and to bore is "to pierce with a turning or twisting movement of a tool." *See Merriam-Webster Online*, Merriam-Webster Inc., 2010, http://www.merriam-webster.com/dictionary/bore. [Ex. H].

        b.     "extending therethrough"

By its plain language, "extending therethrough" means that the thing, in this case the threaded bore, is "extending from one side to the other" of the clamp member. Thus, as shown in Figure 2, the hole and its threads begin at one side (i.e., the side adjacent the tubes) of the clamp member 24 in which it has been bored, and ends at the other side (i.e., the outer side) of the clamp member 24.

Dictionary definitions fully support the aforementioned construction. For example, Merriam-Webster's online dictionary most relevantly defines "through" as indicating passage from one end or boundary to another. *.See Merriam-Webster Online*, Merriam-Webster Inc., definition 1a(3), 2010, http://www.merriam-webster.com/dictionary/through. [Ex. H]. Thus, in claim 1, the bore and its threading extends from one side of one of the clamp members to the other side. Nothing in the claims, specification, or prosecution history suggests the limitation "extending therethrough" carries any meaning other than its ordinary and customary meaning.

5.      **<u>"said bolt means including a single bolt"</u>**

By its plain language, the clause "said bolt means including a single bolt" means that "the bolt structure includes one bolt, but not more than one bolt."

The description of the invention in the '500 Patent uses the word "single" in connection with the word "bolt" only once, in the third object of the invention in the Summary, which reads, "A further object of the invention is to provide a boiler wall tube tool which includes a pair of clamp members and a *single* centrally located clamp bolt…" *See* [Ex. A at col. 1, lines 58-60 (emphasis added)].  The only embodiment of this tool provided in the '500 Patent is illustrated in Figures 1 and 2, which show that one bolt 32.

In contrast, the Summary states that another object of the invention is to provide a boiler wall tube tool having *two* bolts, i.e., "a pair of clamp bolts being used to align the adjacent ends of the boiler wall tube." *See* [Ex. A at col. 2, lines 1-2].  That two-bolt embodiment is shown in Figures 3 and 4.

As a general rule, <u>every term</u> must be construed in a claim.  *See Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1557 (Fed. Cir. 1995) ("We must give meaning to all the words in [the patent's] claims").  *See also Apple Computer, Inc. v. Articulate Systems, Inc.*, 234 F.3d 14, 25 (Fed. Cir. 2000); *Harris Corp. v. IXYS Corp.*, 114 F.3rd 1149, 1152 (Fed. Cir. 1997) (holding that a construction that effectively rendered certain terms of a claim irrelevant "would contribute nothing but meaningless verbiage to the definition of the claimed invention" and is therefore disfavored).  The general rule that the words "a" or "an" means "one or more" does not apply when the context clearly evidences that the usage be limited to the singular.  *See TiVo, Inc. v. EchoStar Communications Corp.*, 516 F.3d 1290, 1303 (Fed. Cir. 2008) (citations omitted). Indeed, in *IPXL Holdings, L.L.C. v. Amazon.com, Inc.,* the Federal Circuit held that the claim

term "single" restricted the element it modified to one—but not more than one—element. *See*

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1379-81 (Fed. Cir. 2005) (claimed

"single" screen restricted the claim scope to only one screen). Likewise, the word "single"

modifying "bolt" in the '500 Patent claim 1 restricts the claim to one, but not more than one,

bolt.

### C.     Claim 4

Various terms of claim 4 of the '500 Patent are independently relevant to establishing

noninfringement. Those terms are emphasized below in claim 4, which recites:

> 4. A boiler wall tube tool comprising a pair of opposed clamp members with each clamp member including at least one recess therein to engage **adjacent ends of a boiler wall tube** on **opposite sides of a juncture** between the adjacent ends, means moving the clamp members towards each other for secure clamping engagement with adjacent ends of the tube for maintaining them in alignment while connecting the ends of the tube by welding, each clamp member including **means providing access to the periphery of the juncture between the ends of the tube clamped by the clamp members**, said means moving the clamp members towards each other including bolt means connecting said clamp members for moving the clamp members towards each other and enabling the clamp members to be moved away from each other and to be separated, said bolt means including a headed bolt having a threaded end portion, **one of said clamp members including a threaded bore extending therethrough** for threadably receiving the threaded portion of the bolt with the headed end of the bolt engaging the other clamp member to enable the clamp members to be securely clamped to the adjacent ends of the tube to retain the ends of the tube in secure alignment, each of said clamp members having a **single recess** therein receiving adjacent ends of a **single boiler wall tube**, said bolt means including a pair of bolts extending centrally through said clamp members and between adjacent boiler wall tubes at the juncture between adjacent ends of the pair of boiler wall tubes.

[Ex. A (emphasis added)].

Only the terms emphasized above that were not already constructed above with respect to

claim 1 are discussed as follows.

#### 1.     **"single recess"**

By its plain language, the clause "single recess" means "one recess, but not more than

one recess." That construction is supported in the specification by differentiating this one-recess

embodiment of the boiler wall tube tool 70 of Figures 3 and 4 from the two-recess embodiment 10 of Figures 1 and 2. For example, in the Summary, the '500 Patent specifies that one object of the invention is to provide a "*single* recess to engage adjacent ends of a single boiler wall tube with a pair of clamp bolts..." *See* [Ex. A at col. 1, line 67 to col. 2, line 1]. That one recess appears to be shown in the clamp member 72 in Figure 4 at reference number 80. A similar unnumbered recess appears in the other clamp member 74. Nothing in the specification or prosecution history supports any other definition.

Further, as in the construction of "single" in claim one as supported by the case law cited in the relevant section above, the term "single" here restricts the number of recesses to one, and not more than one.

### 2.    "single boiler wall tube"

As in the section above and by plain language, the clause "single boiler wall tube" means "one boiler wall tube, but not more than one boiler wall tube." Such a construction is supported in the '500 Patent, which states that the structure of the boiler wall tube tool 70 of Figures 3 and 4 is the same as the tool 10 of Figures 1 and 2 except that the tool 70 secures a "single tube 16 rather than a pair of tubes 16." *See* [Ex. A at col. 3, lines 45-50].

Further, as in the construction of "single" in claim one as supported by the case law cited in the relevant section above, the term "single" here restricts the number of recesses to one, and not more than one.

### 3.    "said bolt means including a pair of bolts extending centrally through said clamp members and between adjacent boiler wall tubes at the juncture between adjacent ends of the pair of boiler wall tubes"

By its plain language, the clause "said bolt means including a pair of bolts extending centrally through said clamp members and between adjacent boiler wall tubes at the juncture

between adjacent ends of the pair of boiler wall tubes" means that "the bolt means includes two bolts that extend through the center of the clamp members relative to the elongated ends of the clamp members and between adjacent boiler wall tubes where, for each boiler wall tube, the ends of the boiler wall tube that are close together join."

The only embodiment of the '500 Patent that includes two bolts is shown in Figures 3 and 4. In those figures, the two bolts (one having the reference number 100 in Figure 4) are located in a portion of the boiler wall tube tool 70 that may be considered central relative to the elongated ends as shown from the perspective view of Figure 3. That evidence supports the aforementioned construction that extending "centrally" through the clamp members means extending at a central portion with respect to those elongated ends. Otherwise, the term "centrally" has no context and its positioning in the clamp members cannot be determined and the claim would be invalid for indefiniteness.

Regardless, and as discussed above, the tube ends of each boiler wall tube are remote as opposed to adjacent, and thus no juncture exists in which those ends can join. This limitation thus cannot be achieved and renders the clause and claim 4 indefinite and invalid.

### D.    Claim 7

Various terms of claim 7 of the '500 patent are independently relevant to establishing noninfringement. Those terms are emphasized below in claim 7, which recites:

> 7. **In combination with a boiler tube wall** formed by a plurality of closely spaced tubes rigidly connected by webs, **a tool** for clampingly engaging adjacent ends of a tube from which the connecting webs have been removed and retaining the adjacent tube ends in alignment while being connected by welding, said tool comprising a pair of opposed clamp members with each clamp member including **recess means therein to engage adjacent ends of at least one boiler wall tube on opposite sides of a juncture between the adjacent tube ends,** means moving the clamp members towards each other for secure clamping engagement with only the adjacent ends of the tube for maintaining them in alignment while connecting the ends of the tube by welding, each clamp member including **means providing access to the periphery of the juncture between the ends of the tube clamped by the clamp members**, said means moving the clamp members

towards each other including bolt means extending between the tubes in the areas from which the webs have been removed.

[Ex. A (emphasis added)].

### 1.   "In combination with a boiler tube wall…a tool"

The clause, "in combination with a boiler tube wall…a tool," by its plain meaning, means "a tool and a boiler tube wall." That construction is supported in the specification, such as in Figures 1 and 2, which show the combination of a boiler wall tube tool 10 and a boiler tube wall 18, and in Figures 3 and 4, which show the combination of a boiler wall tube tool 70 and an unnumbered boiler tube wall.

### 2.   "recess means therein to engage adjacent ends of at least one boiler wall tube on opposite sides of a juncture between the adjacent tube ends"

The term regarding each clamp member including "recess means therein to engage adjacent ends of at least one boiler wall tube on opposite sides of a juncture between the adjacent tube ends" is a means-plus-function term and must be construed in accordance with 35 U.S.C. § 112(6). The function is "to engage at least one tube having two ends that are close to each other on opposite sides of a point of connection between the two ends that are close to each other." That function is constructed in accordance with terms construed as herein, including "adjacent ends" and "juncture."

However, no structure or structural equivalent shown or described in the '500 Patent corresponds to the aforementioned function. As described herein, the tube ends are not adjacent but remote. Thus, no juncture, i.e., point of connection, can exist between those tube ends. This limitation in the means-plus-function clause thus cannot be achieved and renders the clause and claim 7 indefinite and invalid.

E.     **Claim 10**

Various terms of claim 10 of the '500 Patent are independently relevant to establishing

noninfringement.  Those terms are emphasized below in claim 10, which recites:

> 10.  A boiler wall tube tool comprising a pair of opposed clamp members with each
> clamp member including a pair of longitudinal recesses therein to receive and engage
> **adjacent ends of a pair of boiler wall tubes** on **opposite sides of a juncture between
> the adjacent ends**, bolt means moving the clamp members towards each other for secure
> clamping engagement of the adjacent ends of a pair of boiler wall tubes for maintaining
> them in alignment while connecting the ends of the tubes by welding, each clamp
> member including **means providing access to the periphery of the juncture between
> the adjacent ends of the pairs of tubes clamped by the clamp members**, said bolt
> means including a **single bolt** extending centrally through said clamp members and
> between the pair of boiler wall tubes at the juncture between adjacent ends of the boiler
> wall tubes, said means providing access to the periphery of the juncture between the
> adjacent ends of the tubes including a laterally inwardly extending centrally disposed
> recess in each side edge of each clamp member in alignment with the juncture between
> the adjacent ends of the pair of tubes thereby providing access to a substantial portion of
> the periphery of the adjacent ends of the pair of tubes both interiorly and exteriorly of the
> boiler wall formed by the tubes, the headed end of the single bolt engaging the outer
> clamp member thereby rendering the head of the bolt available for engagement by a
> wrench exteriorly of the boiler wall formed by the tubes.

[Ex. A (emphasis added)].

1.     **"adjacent ends of a pair of boiler wall tubes"**

By its plain language, the clause "adjacent ends of a pair of boiler wall tubes" means

"two tubes, each tube having two ends that are close to each other."  Figure 1 shows the pair of

longitudinal recesses 36 and 38, as in claim 10, that receive and engage tube ends.  Those

recesses 36 and 38 each engage two boiler wall tubes as shown, but only one end of each boiler

wall tube.  Thus, neither the recess 36 nor the recess 38 engage both ends of one boiler wall tube,

and no boiler wall tube has ends that are close to each other.  Therefore, the clause "adjacent

ends of a pair of boiler wall tubes" is nonsensical and invalid for indefiniteness.

Nonetheless, the language is clear and should be construed by its plain language in light

of the aforementioned intrinsic evidence.

**2.**     **"means providing access to the periphery of the juncture between the adjacent ends of the pairs of tubes clamped by the clamp members"**

The clause that each clamp member includes "means providing access to the periphery of the juncture between the adjacent ends of the pairs of tubes clamped by the clamp members" is a means-plus-function term and must be construed in accordance with 35 U.S.C. § 112(6). The function is, by plain meaning, "to provide access to the perimeter of a closed curve of, for each of the pair of tubes, the point of connection between the tube ends that are close to each other, the tube ends clamped by the clamp members."

However, no structure or structural equivalent shown or described in the '500 Patent corresponds to the aforementioned function since, for each tube, the ends are remote and no point of connection can therefore exist. The clause is therefore indefinite and invalidates claim 10.

**IV.     CONCLUSION**

For the foregoing reasons, Wilson Works respectfully requests that the Court adopt the claim constructions provided herein.

Dated:  September 1, 2010                    **WILSON WORKS, INC.**

                                            **By Spilman Thomas & Battle, PLLC**

                                            /s/ James A. Walls
                                            James A. Walls (WV Bar No. 5175)
                                            49 Donley Street, Suite 800
                                            P.O. Box 615
                                            Morgantown, WV  26507-0615
                                            (304) 291-7920 (T)
                                            (304) 291-7979 (F)

**EXHIBIT A**

**EXHIBIT B**

**EXHIBIT C**

**EXHIBIT D**

**<u>EXHIBIT E</u>**

**EXHIBIT F**

**EXHIBIT G**

# EXHIBIT H

**EXHIBIT I**

**APPENDIX I**

| Claim 1 of '500 Patent | Wilson Works' Construction |
|---|---|
| 1. A boiler wall tube tool comprising | A boiler wall tube tool. |
| a pair of opposed clamp members with each clamp member including at least one recess therein to engage | The tool includes a pair of opposing clamp members that each includes a recess to engage |
| adjacent ends of a boiler wall tube | A single tube having two ends that are close to each other |
| on opposite sides of a juncture | On opposite sides of a point of connection. |
| between the adjacent ends | Between the two ends that are close to each other. |
| means moving the clamp members towards each other for secure clamping engagement with adjacent ends of the tube for maintaining them in alignment while connecting the ends of the tube by welding, | This is a means-plus-function term and must be construed in accordance with 35 U.S.C. § 112(6).<br><br>The function is "moving the clamp members towards each other for secure clamping engagement of only the two ends of the tube that are close to each other for keeping those ends aligned while connecting those ends by welding."<br><br>The corresponding structure disclosed in the figures and specification is a single threaded bolt 32 engaged in a bore, threaded through its length 66 in the clamp member 24: "a clamp bolt 32 adjusting the position of the outer clamp member 26 in relation to the inner clamp member 24". (col. 2, lines 50-52)<br><br>"the clamp bolt 32 includes a head 60 and a threaded portion 62 [sic, the correct element number is 64 as shown in Fig. 2] which is threaded through internally threaded bore 64 [sic, the correct element number is 66 as shown in Fig. 2] in clamp member 24. The bolt 32 extends through a slot 22 at the juncture 52 and a washer 66 [sic, unnumbered in Fig. 2] is positioned between the head 60 and flat surface 48 on clamp member 26. As illustrated in FIG. 1, a power wrench such as an air wrench 68 may be used to tighten and loosen the bolt 32". (col. 3, lines 33-40) |

The single threaded bolt 32 and bore threaded through its length 66 are illustrated in Figs. 1 and 2:



FIG.1



FIG. 2

| each clamp member including means providing access to the | The term "each clamp member including means providing access to the periphery of the juncture between the ends of the tube clamped by the clamp members" is a means-plus-function term and must be construed in accordance with 35 U.S.C. § 112(6). |
| --- | --- |
| | The function is "to provide access to the perimeter of a closed curve of the point of connection between the two tube ends that are close to each other, the tube ends |

| | |
|---|---|
| | clamped by the clamp members." |
| | However, no structure or structural equivalent shown or described in the '500 Patent corresponds to the aforementioned function. The clause is therefore indefinite and invalidates claim 1. Specific terms of the clause are addressed here and below: |
| | Each clamp member includes means having the function to provide access to the |
| periphery | Perimeter of a closed curve. |
| of the juncture between the ends of the tube clamped by the clamp members, | Of the point of connection between the two tube ends that are close to each other, the tube ends clamped by the clamp members. |
| said means moving the clamp members towards each other including bolt means connecting said clamp members for moving the clamp members towards each other and enabling the clamp members to be moved away from each other and to be separated, said bolt means including a headed bolt having a threaded end portion, | This is a means-plus-function term and must be construed in accordance with 35 U.S.C. § 112(6). |
| | The function is "moving the clamp members towards each other including a bolt means connecting the clamp members for moving the clamp members towards each other and enabling the clamp members to be moved away from each other and to be separated." The bolt means includes a headed bolt having a threaded end portion. |
| | The corresponding structure disclosed in the figures and specification is the single threaded bolt 32 and the bore threaded through its length 66: "the clamp bolt 32 includes a head 60 and a threaded portion 62 [sic, the correct element number is 64 as shown in Fig. 2] which is threaded through internally threaded bore 64 [sic, the correct element number is 66 as shown in Fig. 2] in clamp member 24. The bolt 32 extends through a slot 22 at the juncture 52 and a washer 66 [sic, unnumbered in Fig. 2] is positioned between the head 60 and flat surface 48 on clamp member 26. As illustrated in FIG. 1, a power wrench such as an air wrench 68 may be used to tighten and loosen the bolt 32". (col. 3, lines 33- |

| | 40) |
|---|---|
| one of said clamp members including a threaded bore extending therethrough | One of the clamp members has a hole with its boundary defined by threading, the hole and its threading cut into the clamp member and extending from one side to the other. |
| for treadably[2] receiving the threaded portion of the bolt with the headed end of the bolt engaging the other clamp member to enable the clamp members to be securely clamped to the adjacent ends of the tube to retain the adjacent ends of the tube in secure alignment, | The threaded hole that was bored through the clamp member receives the threaded portion of a bolt.  The head of the bolt engages the other clamp member to enable the clamp members to be securely clamped to both boiler wall tube ends, which are adjacent, to securely hold those boiler wall tube ends in alignment. |
| each of said clamp members having a pair of recesses therein receiving adjacent ends of a pair of boiler wall tubes, | The boiler wall tube tool includes two boiler wall tubes and each clamp member includes two recesses that receive opposite ends of each boiler wall tube |
| said bolt means including a single bolt | The bolt structure includes only a single bolt, as opposed to more than one bolt |
| extending centrally through said clamp members and between the pair of boiler wall tubes at the juncture between adjacent ends of the boiler wall tubes. | The bolt means including a single bolt, as opposed to more than one bolt, extends through the center of the clamp member and between adjacent boiler wall tubes where the opposite ends of the boiler wall tube tools join. |

| Claim 2 of '500 Patent | Wilson Works Tool |
|---|---|
| 2. The structure as defined in claim 1 | The boiler wall tube tool of claim 1. |
| wherein said means providing access to the periphery of the juncture includes a laterally inwardly extending centrally disposed recess in each side edge of each clamp member | The means that provides access to the perimeter of the closed curve of the point of connection includes a laterally inwardly extending centrally disposed recess in each side edge of each clamp member |
| in alignment with the juncture | In alignment with the point of connection. |
| between the adjacent ends of the pair of tubes | Between, for each of two tubes, the two ends that are close to each other. |
| thereby providing access to a substantial portion of the periphery of the adjacent ends of the pair of tubes both interiorly and exteriorly of the boiler wall formed by the tubes. | Thereby providing access to a substantial portion of the the perimeter of the closed curve of the two ends that are close to each other, both interior to and exterior to the boiler wall, which is formed by the tubes. |

---

[2] The term, "treadably" is undefined in the '500 Patent specification and indefinite.  However, for purposes of providing a complete claim construction in this brief, the term "threadably" is construed.

| Claim 3 of '500 Patent | Wilson Works Tool |
|---|---|
| 3. The structure as defined in claim 2 | The boiler wall tube tool of claim 2. |
| wherein the threaded bore is formed in the clamp member positioned inwardly of the boiler wall tubes | The hole with its boundary defined by threading, the hole and its threading cut into the clamp member, is positioned inward as compared to the position of the boiler wall tubes. |
| with the headed end of the single bolt engaging the outer clamp member | The single bolt, as opposed to more than one bolt, engages an outer clamp member |
| thereby rendering the head of the bolt available for engagement by a wrench exteriorly of the boiler wall formed by the tubes. | Exposing the head of the bolt for engagement by a wrench at a position exterior to the boiler wall formed by the tubes. |

| Claim 4 of '500 Patent | Wilson Works Tool |
|---|---|
| 4. A boiler wall tube tool comprising | A boiler wall tube tool including |
| a pair of opposed clamp members with each clamp member including at least one recess therein to engage | The tool includes a pair of opposing clamp members that each includes a recess to engage a recess to engage |
| adjacent ends of a boiler wall tube | A single tube having two ends that are close to each other. |
| on opposite sides of a juncture | On opposite sides of a point of connection where the boiler wall tube ends join. |
| between the adjacent ends | Between the two ends that are close to each other. |
| means moving the clamp members towards each other for secure clamping engagement with adjacent ends of the tube for maintaining them in alignment while connecting the ends of the tube by welding, | This is a means-plus-function term and must be construed in accordance with 35 U.S.C. § 112(6).<br><br>The function is "moving the clamp members towards each other for secure clamping engagement of only the two ends of the tube that are close to each other for keeping those ends aligned while connecting those ends by welding."<br><br>The corresponding structure disclosed in the figures and specification are two threaded bolts 100: "each of the wings 78 are interconnected by bolts 100 having a head 102 at one end and a threaded portion 104 at the other end which is in screw |

threaded engagement with an internally threaded bore 106 in the inner clamp member 72 with the shank of the bolt 100 being rotatable in a bore 108 in the wing 78 on the clamp member 74. A washer 110 is positioned under the head of the bolt. As illustrated, two bolts are utilized with each of the bolts extending through slots 22 at the juncture 112 between the adjacent ends 12 and 14 of the tube 16 as illustrated in FIG. 3. By using a power wrench such as an air wrench or any other suitable type of wrench, the bolts can be quickly and easily tightened or loosened to securely clamp the adjacent ends 12 and 14 of the tube 16 in alignment to enable the beveled ends of the tube to be easily welded through the openings 90 in the clamp members 72 and 74". (col. 4, lines 6-22)

The threaded bolts 100 are illustrated in Figs. 3 and 4:



FIG. 3

FIG.4

| | |
|---|---|
| each clamp member including means providing access to the | The term "each clamp member including means providing access to the periphery of the juncture between the ends of the tube clamped by the clamp members" is a means-plus-function term and must be construed in accordance with 35 U.S.C. § 112(6).

The function is "to provide access to the perimeter of a closed curve of the point of connection between the two tube ends that are close to each other, the tube ends clamped by the clamp members."

However, no structure or structural equivalent shown or described in the '500 Patent corresponds to the aforementioned function. The clause is therefore indefinite and invalidates claim 1. Specific terms of the clause are provided here and below:

Each clamp member includes means having the function to provide access to the |
| periphery | Perimeter of the closed curve |
| of the juncture between the ends of the tube clamped by the clamp members, | Of the point of connection between the two tube ends that are close to each other, the tube ends clamped by the clamp members. |
| said means moving the clamp members towards each other including bolt means connecting said clamp members for moving the clamp members towards each other and enabling the clamp members to be moved away from each other and to be separated, said bolt means including a headed bolt having a threaded end portion, | This is a means-plus-function term and must be construed in accordance with 35 U.S.C. § 112(6).

The function is "moving the clamp members towards each other including a bolt means connecting the clamp members for moving the clamp members towards |

| | each other and enabling the clamp members to be moved away from each other and to be separated." The bolt means includes a headed bolt having a threaded end portion. |
|---|---|
| | The corresponding structure disclosed in the specification are bolts 100: "each of the wings 78 are interconnected by bolts 100 having a head 102 at one end and a threaded portion 104 at the other end which is in screw threaded engagement with an internally threaded bore 106 in the inner clamp member 72 with the shank of the bolt 100 being rotatable in a bore 108 in the wing 78 on the clamp member 74. A washer 110 is positioned under the head of the bolt. As illustrated, two bolts are utilized with each of the bolts extending through slots 22 at the juncture 112 between the adjacent ends 12 and 14 of the tube 16 as illustrated in FIG. 3. By using a power wrench such as an air wrench or any other suitable type of wrench, the bolts can be quickly and easily tightened or loosened to securely clamp the adjacent ends 12 and 14 of the tube 16 in alignment to enable the beveled ends of the tube to be easily welded through the openings 90 in the clamp members 72 and 74". (col. 4, lines 6-22) |
| one of said clamp members including a threaded bore extending therethrough | One of the clamp members has a hole with its boundary defined by threading, the hole and its threading cut into the clamp member and extending from one side to the other. |
| for threadably receiving the threaded portion of the bolt with the headed end of the bolt engaging the other clamp member to enable the clamp members to be securely clamped to the adjacent ends of the tube to retain the adjacent ends of the tube in secure alignment, | For receiving the threaded portion of a bolt, with the head of the bolt engaging the other clamp member to enable the clamp members to be securely clamped to the two ends of the tube that are close to each other to securely hold those ends of the tube in alignment. |
| each of said clamp members having a | Each of the clamp members has a includes a boiler wall tube. Each of the clamp |

|  | members includes only a single recess, as opposed to more than one recess, and that single recess receives opposite ends of one boiler wall tube. |
|---|---|
| single recess | One recess, but not more than one recess. |
| therein receiving adjacent ends of a | The one recess is in each of the clamp members and receives the two ends that are close to each other of a |
| single boiler wall tube, | One boiler wall tube, but not more than one boiler wall tube. |
| said bolt means including a pair of bolts extending centrally through said clamp members and between adjacent boiler wall tubes at the juncture between adjacent ends of the pair of boiler wall tubes. | The bolt means includes two bolts that extend through the center of the clamp members relative to the elongated ends of the clamp members and between adjacent boiler wall tubes where, for each boiler wall tube, the ends of the boiler wall tube that are close together join. |

| Claim 5 of '500 Patent | Wilson Works Tool |
|---|---|
| 5. The structure as defined in claim 4 wherein said means providing access to the periphery of the juncture between the adjacent ends of the tube includes a centrally disposed opening in each clamp member in alignment with the juncture between the adjacent ends of the tube | The boiler wall tube tool wherein the means that provides access to the perimeter of the closed curve of the point of connection where the boiler wall tube ends join includes a centrally positioned opening in each clam member in alignment with the external boundary |
| thereby providing access to a substantial portion of the periphery of the adjacent ends of the tube both interiorly and exteriorly of the boiler wall formed by the tubes. | thereby providing access to a substantial portion of the perimeter of the closed curve of the ends that are close to each other of the single boiler wall tube interior to and exterior to the boiler wall, which is formed by the tubes. |

| Claim 6 of '500 Patent | Wilson Works Tool |
|---|---|
| 6. The structure as defined in claim 5 wherein a pair of threaded bores are formed in clamp member positioned inwardly of the boiler wall tubes | The boiler wall tube tool wherein two holes with their boundaries defined by threading, the holes and their threading cut into the clamp member, positioned inward as compared to the positions of the boiler wall tubes |
| with the headed end of the pair of bolts engaging the outer clamp member thereby rendering the heads of the bolts available for engagement by a wrench exteriorly of | With the headed end of the pair of bolts engaging the outer clamp member thereby exposing the head of the bolt for engagement by a wrench at a position |

| | |
|---|---|
| the boiler wall formed by the tubes. | exterior to the boiler wall formed by the tubes. |

| Claim 7 of '500 Patent | Wilson Works Tool |
|---|---|
| 7. In combination with a boiler tube wall formed by a plurality of closely spaced tubes rigidly connected by webs, | The combination of a boiler tube wall and a tool, the boiler tube wall formed by a plurality of closely spaced tubes rigidly connected by webs.  The boiler tube wall is combined with the tool. |
| a tool for clampingly engaging adjacent ends of a tube | A tool for engaging, by clamp, a single clamp at its two ends that are close to each other. |
| from which the connecting webs have been removed and retaining the adjacent tube ends in alignment while being connected by welding, | The connecting webs have been removed from the boiler tube wall.  The tool retains the tube ends, which are adjacently positioned, in alignment while those tube ends are connected by welding. |
| said tool comprising a pair of opposed clamp members with each clamp member including recess means therein to engage | The term "each clamp member including recess means therein to engage adjacent ends of at least one boiler wall tube on opposite sides of a juncture between the adjacent tube ends" is a means-plus-function term and must be construed in accordance with 35 U.S.C. § 112(6).<br><br>The function is "to engage at least one tube having two ends that are close to each other on opposite sides of a point of connection between the two ends that are close to each other."<br><br>However, no structure or structural equivalent shown or described in the '500 Patent corresponds to the aforementioned function.  The clause is therefore indefinite and invalidates claim 1.  Specific terms of the clause are provided here and below:<br><br>Each clamp member includes means having the function to engage |
| adjacent ends of at least one boiler wall tube | At least one tube having ends that are close to each other |
| on opposite sides of a juncture | On opposite sides of a point of connection |
| between the adjacent tube ends, | Between the two ends that are close to each other |

| | |
|---|---|
| means moving the clamp members towards each other for secure clamping engagement with only the adjacent ends of the tube for maintaining them in alignment while connecting the ends of the tube by welding, | This is a means-plus-function term and must be construed in accordance with 35 U.S.C. § 112(6).<br><br>The function of the means is "moving the clamp members towards each other for secure clamping engagement of only the two ends of the tube that are close to each other for keeping those ends aligned while connecting those ends by welding."<br><br>The corresponding structure disclosed in the specification is the single threaded clamp bolt 32 and the bore 66 threaded through its length the clamp member 24: "a clamp bolt 32 adjusting the position of the outer clamp member 26 in relation to the inner clamp member 24".  (col. 2, lines 50-52; Figs. 1 and 2)<br><br>"the clamp bolt 32 includes a head 60 and a threaded portion 62 [sic, the correct element number is 64 as shown in Fig. 2] which is threaded through internally threaded bore 64 [sic, the correct element number is 66 as shown in Fig. 2] in clamp member 24.  The bolt 32 extends through a slot 22 at the juncture 52 and a washer 66 [sic, unnumbered in Fig. 2] is positioned between the head 60 and flat surface 48 on clamp member 26.  As illustrated in FIG. 1, a power wrench such as an air wrench 68 may be used to tighten and loosen the bolt 32".  (col. 3, lines 33-40) |
| each clamp member including means providing access to the | The term "each clamp member including means providing access to the periphery of the juncture between the ends of the tube clamped by the clamp members" is a means-plus-function term and must be construed in accordance with 35 U.S.C. § 112(6).<br><br>The function is "to provide access to the perimeter of a closed curve of the point of connection between the two tube ends that are close to each other, the tube ends |

|  | clamped by the clamp members." |
|  | However, no structure or structural equivalent shown or described in the '500 Patent corresponds to the aforementioned function. The clause is therefore indefinite and invalidates claim 1. Specific terms of the clause are addressed here and below: |
|  | Each clamp member includes means that provides access to the |
| periphery | Perimeter of the closed curve |
| of the juncture between the ends of the tube clamped by the clamp members, | Of the point of connection between the two tube ends that are close to each other, the tube ends clamped by the clamp members. |
| said means moving the clamp members towards each other including bolt means extending between the tubes in the areas from which the webs have been removed. | The structure that is moving the clamp members towards each other including a bolt structure extending between the tubes in areas from which the webs have been removed. |

| Claim 8 of '500 Patent | Wilson Works Tool |
|---|---|
| 8. The combination as defined in claim 7, wherein each of said clamp members includes a pair of recess means extending longitudinally in parallel relation, | The combination of the boiler tube wall and the tool, wherein each of the clamp members includes a pair of recess means extending longitudinally and parallel to each other. |
| said bolt means including a single centrally disposed bolt having a head at one end and a threaded portion at the other end, | The bolt structure includes only a single bolt, as opposed to more than one bolt, and that single bolt is centrally positioned and has a head at one end and is threaded at the other end. |
| the inner clamp member having a threaded bore | The inner clamp member has a hole with its boundary defined by threading, the hole and its threading cut into the clamp member. |
| in threaded engagement with the bolt to enable a power wrench to tighten and loosen the bolt thereby tightening and loosening the clamp members, | the bolt is threaded through the hole to enable a power wrench to tighten and loosed the bolt to tighten and loosen the clamp member. |
| said means providing access including laterally inwardly extending side edge notches on each of said clamp members in alignment with the juncture between the | The means that provides access to the perimeter of the closed curve of the point of connection where the boiler wall tube ends join. including laterally inwardly |

| | |
|---|---|
| adjacent ends of the pair of tubes thereby enabling access to a substantial portion of the periphery of the adjacent ends of the pair of tubes. | extending side edge notches on each clamp member and aligned with point of connection between the tube ends that are close to each other, enabling access to a substantial portion of the perimeter of the closed curve of, for each of two tubes, the ends that are close to each other. |

| Claim 10 of '500 Patent | Wilson Works Tool |
|---|---|
| 10. A boiler wall tube tool comprising | A tool for a boiler tube wall including |
| a pair of opposed clamp members with each clamp member including a pair of longitudinal recesses therein to receive and engage | two opposing clamp members with each clamp member including a pair of recesses along the clamp member length to receive and engage |
| adjacent ends of a pair of boiler wall tubes | Two tubes, each tube having two ends that are close to each other |
| on opposite sides of a juncture | On opposite sides of a point of connection. |
| between the adjacent ends, | Between the two ends that are close to each other. |
| bolt means moving the clamp members towards each other for secure clamping engagement of the adjacent ends of a pair of boiler wall tubes for maintaining them in alignment while connecting the ends of the tubes by welding, | This is a means-plus-function term and must be construed in accordance with 35 U.S.C. § 112(6).

The function is "moving the clamp members towards each other for secure clamping engagement of the adjacent ends of a pair of boiler wall tubes for maintaining them in alignment while connecting the ends of the tubes by welding."

The corresponding structure disclosed in the figures and specification is a single threaded bolt 32 and a bore threaded through its length 66 in the clamp member 24: "a clamp bolt 32 adjusting the position of the outer clamp member 26 in relation to the inner clamp member 24". (col. 2, lines 50-52)

"the clamp bolt 32 includes a head 60 and a threaded portion 62 [sic, the correct element number is 64 as shown in Fig. 2] which is threaded through internally threaded bore 64 [sic, the correct element |

number is 66 as shown in Fig. 2] in clamp member 24. The bolt 32 extends through a slot 22 at the juncture 52 and a washer 66 [sic, unnumbered in Fig. 2] is positioned between the head 60 and flat surface 48 on clamp member 26. As illustrated in FIG. 1, a power wrench such as an air wrench 68 may be used to tighten and loosen the bolt 32". (col. 3, lines 33-40)

The threaded bolt 32 and bore threaded through its length 66 are illustrated in Figs. 1 and 2:



FIG.1



FIG. 2

A bolt structure moves the clamp members toward each other to securely clamp, for each of two boiler wall tubes, two ends that

| | are close to each other to keep the ends aligned while the ends are welded together. |
|---|---|
| each clamp member including means providing access to the | The term "each clamp member including means providing access to the periphery of the juncture between the adjacent ends of the pairs of tubes clamped by the clamp members" is a means-plus-function term and must be construed in accordance with 35 U.S.C. § 112(6).<br><br>The function is "to provide access to the perimeter of a closed curve of, for each of the pair of tubes, the point of connection between the tube ends that are close to each other, the tube ends clamped by the clamp members."<br><br>However, no structure or structural equivalent shown or described in the '500 Patent corresponds to the aforementioned function.  The clause is therefore indefinite and invalidates claim 1.  Specific terms of the clause are addressed here and below.<br><br>Each clamp member includes means that provides access to the |
| periphery | Perimeter of the closed curve |
| of the juncture between the adjacent ends of the pairs of tubes clamped by the clamp members, | Of, for each of the pair of tubes, the point of connection between the tube ends that are close to each other, the tube ends clamped by the clamp members. |
| said bolt means including a single bolt | The bolt means includes only a single bolt, as opposed to more than one bolt |
| extending centrally through said clamp members and between the pair of boiler wall tubes at the juncture between adjacent ends of the boiler wall tubes, | The single bolt extends through the center of the clamp members and between the two boiler wall tubes at the point of connection between the two ends that are close to each other. |
| said means providing access to the periphery of the juncture between the adjacent ends of the tubes including a laterally inwardly extending centrally disposed recess in each side edge of each clamp member | The means that provides access to the perimeter of the closed curve of the point of connection includes a laterally inwardly extending centrally disposed recess in each side edge of each clamp member The structure that provides access to the external boundary of the position where the pairs of tubes join includes a laterally |

| | inwardly extending centrally disposed recess in each side edge of each clamp member in alignment with the external boundary, thereby providing access to a substantial portion of the external boundary both interior to and exterior to the boiler wall, which is formed by the tubes. |
|---|---|
| in alignment with the juncture | In alignment with the point of connection. |
| between the adjacent ends of the pair of tubes | Between, for each of two tubes, the two ends that are close to each other. |
| thereby providing access to a substantial portion of the periphery of the adjacent ends of the pair of tubes both interiorly and exteriorly of the boiler wall formed by the tubes, | Thereby providing access to a substantial portion of the perimeter of the closed curve of the two ends that are close to each other, both interior to and exterior to the boiler wall, which is formed by the tubes. |
| the headed end of the single bolt engaging the outer clamp member | The headed end of the single bolt, as opposed to more than one bolt, engages the outer clamp member. |
| thereby rendering the head of the bolt available for engagement by a wrench exteriorly of the boiler wall formed by the tubes. | Exposing the head of the bolt for engagement by a wrench at a position exterior to the boiler wall formed by the tubes. |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

**WALHONDE TOOLS, INC.,**

      **Plaintiff,**

      **v.**                             **Civil Action No. 1:09-CV-48**

**WILSON WORKS, INC., a West Virginia**
**corporation, NORTHCO CORP., a**              **Judge Keeley**
**West Virginia corporation, NAES POWER**
**CONTRACTORS, INC., a successor by**
**merger to American Boiler & Chimney**
**Company, a Washington corporation,**
**MINNOTTE CONTRACTING**
**CORPORATION, a Pennsylvania**
**corporation, FOSTER WHEELER ZACK,**
**INC., a Delaware corporation, DAY &**
**ZIMMERMAN NPS, INC., a Delaware**
**corporation,**

      **Defendants.**

## CERTIFICATE OF SERVICE

    I hereby certify that on September 1, 2010 a true and correct copy of the foregoing

**"Defendant Wilson Works, Inc.'s Markman Brief"** was filed with the Court using the Court's

CM/ECF system, which will provide notice to the following:

| | |
|---|---|
| Robert R. Waters, Esq. | Christopher S. Morris, Esq. |
| Jason A. Poling, Esq. | Bailey & Glasser, LLP |
| Waters Law Group, PLLC | 209 Capitol Street |
| 633 Seventh Street | Charleston, WV  25301 |
| Huntington, WV  25701 | and |
| *Counsel for Plaintiff* | Jack A. Wheat, Esq. |
| | Christina L. Ryan, Esq. |
| | Stites & Harbison, PLLC |
| | 400 West Market Street, Suite 1800 |
| | Louisville, KY  40202-3352 |
| | *Counsel for NAES Power Contractors* |

Eric G. Soller, Esq.
Pietragallo Gordon Alfano Bosick
   & Raspanti, LLP
One Oxford Centre, 38th Floor
Pittsburgh, PA  15219
      and
Robert J. D'Anniballe, Jr., Esq.
Pietragallo Gordon Alfano Bosick
   & Raspanti, LLP
3173 Main Street
Weirton, WV  26062
*Counsel for Minnotte Contracting Corporation*

John C. Palmer, IV, Esq.
Robinson & McElwee, PLLC – Charleston
P.O. Box 1791
Charleston, WV  25326
      and
Eric S. Marzluf, Esq.
James J. Kozuch, Esq.
1635 Market Street, 11th Floor
Philadelphia, PA  19103-2212
*Counsel for Day & Zimmerman NPS, Inc.*

Carl L. Fletcher, Jr., Esq.
Bowles Rice McDavid
Graff & Love, LLP
600 Quarrier Street
Charleston, WV  25325
      and
Henry J. Renk, Esq.
Fitzpatrick, Cella, Harper & Scinto
1290 Avenue of the Americas
New York, NY  10104-3800
*Counsel for Foster Wheeler Zack, Inc.*

And that a true and correct copy was served by
first class, U.S. mail upon the following:

Northco Corp.
P.O. Box 2100
Morgantown, WV 26502


        /s/ James A. Walls
        James A. Walls