IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

WALHONDE TOOLS, INC.,

        PLAINTIFF,

v.                                      CIVIL ACTION NO. 1:09-CV-00048

WILSON WORKS, INC., et al.,                      (Judge Keely)

        DEFENDANTS

**DEFENDANT NAES POWER CONTRACTORS, INC.'S *MARKMAN* BRIEF**

    Defendant, NAES Power Contractors, Inc. ("Defendant" or "NAES"), pursuant to the Case Management Plan, hereby submits its *Markman*[1] Brief.

### I.    BACKGROUND

    This lawsuit involves tools used in association with constructing and repairing boiler water pipes such as those found in power plants that produce steam in the process of generating electricity. These water pipes are commonly referred to as boiler tubes. This illustration depicts a boiler tube assembly utilized to produce steam power. It consists of tubing (pipes) through which water is circulated adjacent to a heat source, here a fire burning furnace. The heat source heats the water in the boiler tubes, in turn, producing steam which powers turbines and generators in the process of producing electricity.



---

[1] *See Markman v. Westview Instruments, Inc.* 517 U.S. 370 (1996) (holding construction of the claims of a patent is a question of law to be determined by the Court prior to determination by finder of fact of whether the accused product infringes the patent).

These boiler tubes, often quite lengthy, are formed by welding together two or more pipes to attain the desired length. The patent-in-suit, "BOLT-TYPE BOILER WALL TUBE TOOL," U.S. Patent No. 4,936,500 (the "'500 Patent"), relates to a tool in the nature of a clamp used to tightly hold and align multiple lengths of tubing while the tubes are welded together.

Reserved for later date in this litigation, is the question of whether the patent, as issued, is narrow enough to be limited to some inventive new device patentably distinguishable over the "prior art," the preexisting technology associated with devices of this sort. The prior art consists of various devices used to align boiler tubes while being welded, including the use of alignment clamps. Indeed, as the Patent Office noted in examining the patent application that matured into the patent in issue, "The use of alignment clamps in combination with tube walls is well known …." *See* Sept. 19, 1989 Office Action, PL 00065-87, at PL 00066 (attached as Exhibit A) [hereinafter "Office Action"].



One such prior art example is the 1987 United Kingdom Patent Application No. GB 2 189 177 for a "Pipe clamp" (attached as Exhibit B). As seen in the drawing from the UK patent application, that device consists of two sleeve-like clamp members that are wrapped around two pipes to hold them in alignment during welding. The sleeve-like clamp contains an opening (identified in the drawing by the number 46) providing access to the space (16) where the two pipes (12 and 14) abut. A partial weld is shown in the drawing at number 50. Key to this lawsuit, the clamp members in this device are held rigidly in place by two nuts and bolts, identified in the drawing as items 40 and 42.

The '500 Patent here in issue relates to a tool that in function is generally quite similar to the tool shown in the prior art United Kingdom patent application referenced above. Figures 1 and 2 from the '500 Patent appear below:



Figure 1 shows a wall of parallel rows of boiler tubes with the representative tubes to the left marked as 12 and 14. Figure 2 is a cross-sectional view of the tool. It shows a pair of clamp members (24 and 26) wrapped around both sides of the boiler tubes (14). As shown in figure 1, the tool contains an opening (56) to allow access to the abutting tube ends which are to be welded together.

A variation of the tool described in the patent in issue is depicted in figures 3 and 4:


FIG. 3


FIG. 4

One apparent difference between the variations is that the tool shown in Figures 3 and 4 provides a single opening (90) between two abutting tubes, allowing for only one weld while the tool is in place, whereas the variation shown in Figures 1 and 2 simultaneously holds two sets of tubes in alignment, one set shown on the left side of the tool and the other set shown on the right side of the tool. The latter configuration allows for two sets of tubes to be welded while the tool is in place.

Unlike the prior art United Kingdom device which is held firmly together by nuts and bolts, the clamp members of the device in the patent in issue are secured together by a bolt passing through one clamp member and *actually screwed into the other clamp member*. See Fig. 2 showing a bolt (60) passing through one clamp member and actually screwed into the other clamp member (66). Similarly, as shown in Figure 4, the bolts (102) pass through one clamp member and actually screw into the other clamp member (106). This fastening method is described in the patent in issue as follows:

> …bolt means connecting said clamp members for moving said clamp members towards each other and enabling the clamp members to be moved away from each other and to be separated, said bolt means including a headed bolt having a threaded end portion, *one of said clamp members having a threaded bore extending therethrough for treadably [sic] receiving the threaded portion of the bolt*.

'500 Patent at Col. 4, L. 63 – Col. 5, L. 2 (emphasis added).  *See also*, Col. 5, L. 46-50.

A key issue at the *Markman* juncture in this lawsuit is the feature of the alleged invention directed to how the two clamp members are secured together to hold them firmly in place, aligning abutting ends of boiler tubes being welded together.

## II.     THE LAW OF CLAIM CONSTRUCTION

As the Court is aware, the first step in an infringement lawsuit is to determine what exactly the patent covers.  Thus, "an infringement analysis entails two steps.  The first step is determining the meaning and scope of the patent claims asserted to be infringed. … The second step is comparing the properly construed claims to the device accused of infringing."  *Markman v. Westview Ins., Inc.*, 52 F.3d 967 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996) (internal citation omitted).

As this Court recognizes, claim construction is the process of giving proper meaning to the claim language in order "to define the scope of the patented invention."  *Wyeth v. Mylan Pharms., Inc.*, No. 1:07cv91, 2009 U.S. Dist. LEXIS 43800, at *7 (N.D. W.Va. May 22, 2009) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  In other words, interpreting the scope and meaning of a patent claim is akin to determining the location of a property line to ascertain if there has been a trespass.  Accordingly, before determining whether any claim of a patent covers the allegedly infringing item, a court must determine as a matter of law, how one of ordinary skill in the particular art would construe the scope and meaning of each claim in issue.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

As this Court further notes, "an invention must be limited to what is described in the claims." *Wyeth*, 2009 U.S. Dist. LEXIS 43800, at *7. As such, "[t]he analysis 'must begin and remain centered on the claim language itself.'" *Alza Corp. v. Mylan Labs., Inc.*, 349 F. Supp. 2d 1002, 1007 (N.D. W. Va. 2004) (quoting *Novartis Pharms. Corp. v. Abbott Labs.*, 375 F.3d 1328, 1334 (Fed. Cir. 2004)).

The Federal Circuit, in its *en banc* decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005), provided a detailed analysis of the principles and guidelines to be used by a Court discerning the scope and meaning of patent claims. In *Phillips*, the court made clear that claim terms should be given "the ordinary and customary meaning … that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Id*. at 1313. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). However, when "the meaning of a claim term as understood by persons of skill in the art is . . . not immediately apparent . . . the Court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Id*. (internal quotations omitted). Those sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* (internal quotations omitted)).

As the *en banc* panel in *Phillips* noted, "there is no magic formula or catechism for conducting claim construction" and "[t]he sequence of steps used by the judge in consulting

6

various sources is not important." *Id*. at 1324. Consequently, the Court "did not attempt to provide a rigid algorithm for claim construction." *Id*. Instead, the court "simply attempted to explain why, in general, certain types of evidence are more valuable than others," in order to allow a "Court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." *Id*. More specifically, intrinsic evidence (the claims, the rest of the patent, and the prosecution history) is most valuable in determining the scope of claims, whereas extrinsic evidence (dictionaries, treatises, inventor testimony, and expert testimony) is less reliable, and may be used when the extrinsic source does not contradict the intrinsic evidence. *Id*. at 1317.

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Id*. at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

### III. THE COURT SHOULD ADOPT NAES'S PROPOSED CONSTRUCTION FOR THE DISPUTED TERMS

Key terms to be construed include:

(1) "one of said clamp members including a threaded bore extending therethrough" (in claims 1 and 4);
(2) "a single" (in claims 1, 4, and 10); and
(3) "a pair" (in claims 1, 4, 7, and 10).

Additionally, there are "means-plus-function" claims that need to be construed by the Court. The "means-plus-function" issues are discussed *infra* in Section IV.

### A. CONSTRUCTION OF CLAIMS RECITING "ONE OF SAID CLAMP MEMBERS INCLUDING A THREADED BORE EXTENDING THERETHROUGH"

There is nothing novel about using clamps to hold boiler tubes in place while welding them together. The alleged novelty at issue in this case is how the clamps are held together for secure alignment. For instance, in pertinent part, independent claim 1 provides:

> 1. A boiler wall tube tool comprising a pair of opposed clamp members …, means moving the clamp members towards each other for secure clamping engagement with adjacent ends of the tube for maintaining them in alignment while connecting the ends of the tube by welding, …said means moving the clamp members towards each other including bolt means connecting said clamp members for moving the clamp members towards each other and enabling the clamp members to be moved away from each other and to be separated, said bolt means including a headed bolt having a threaded end portion, **one of said clamp members including a threaded bore extending therethrough** for treadably [sic] receiving the threaded portion of the bolt ….

'500 Pat. at 4:51-5:2 (emphasis added).

There is nothing mystical about the meaning of the phrase "one of said clamp members including a threaded bore extending therethrough" in the '500 Patent. The meaning is "readily apparent," thus, "claim construction…involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. This ordinary meaning can be gleaned from a standard dictionary. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) ( "The ordinary meaning of a claim term may be determined by reviewing a variety of sources, including … dictionaries and treatises.").

The term "threaded" is defined as "furnished with a thread" or "having screw threads." WEBSTER'S NEW INT'L DICTIONARY at 2,633 (2d ed. 1934) (copies attached as Exhibit C); Die.Net Online Dictionary, *available at* http://dictionary.die.net/threaded (last visited Sept. 1, 2010), attached as Exhibit D. The term "bore" is defined as a hole made by boring." *See*

WEBSTER'S at 312. In the claims, the word "threaded" is an adjective describing the word "bore," making it clear that it is the bore itself which is threaded. This is consistent with the use of the terms in the claims and the appearance of the structure in the drawings of the patent. Claims 1 and 4, for example, recite "one of said clamp members including a threaded bore extending therethrough." Read in context, the meaning of the phrase is clear:

1. a bore (a hole) extends completely through one of the clamp members; and
2. the bore itself through its entire length is intrinsically threaded with the threads which receive and secure the bolt when the clamp members are screwed together.

It is this bolt means—whereby the bolt passes through one clamp member and is actually screwed into the other clamp member—which differentiates the patent in issue from the United Kingdom prior art reference cited by the Patent & Trademark Office in its initial Office Action. *See* Exhibit A, Office Action at PL 00066.



Unlike the bolt means described in the patent in issue, the United Kingdom prior art reference taught using tube alignment clamps which are held rigidly in place by a bolt and *captive nut* arrangement. Here again is the drawing from that patent application. Exhibit B, UK Pat. App. No. GB 2 189 177. As discussed above, the clamp members in this tool are held in place by nuts and bolts, identified in the drawing as items 40 and 42 respectively.

The Examiner for the '500 Patent considered this piece of prior art highly pertinent. *See* Exhibit A, Office Action at PL 00066. Specifically, the Examiner rejected many of the claims as

9

originally worded, in part, "as being unpatentable over GB 2 189 177." *Id.* Further, the Examiner noted, "GB 2 189 177 discloses a tube alignment clamp comprising clamp halves which are drawn together with a bolt and captive nut arrangement." *Id.*

To overcome this rejection, the patentee amended and clarified the claims in issue, limiting the claims to the bolt means "threaded bore" structure discussed above. *See* Dec. 18, 1989, Amendment, PL 00088-98 (attached as Exhibit E). In the patent application as initially filed, some of the original claims did not include the limitation of a "threaded bore." *See* U.S. Patent Application 07/353,471, PL 00041-64, at PL 00052-56 (attached as Exhibit F). For example, original claims 1 and 6. Rather, in the original claims the threaded bore limitation was introduced in narrower dependent claims.[2] *See* Exhibit F, U.S. Pat. App. 07/353,471 at PL 00052-56. For instance, original claim 2 included the limitation of a threaded bore and was dependent on claim 1. *Id.* at PL 00052. The same is true of the original claim 8 which was indirectly dependent on claim 6. *Id.* at PL 00053-54. The Examiner issued an Office Action rejecting the broad independent claims as obvious and unpatentable over prior art. Exhibit A, Office Action at PL 00066. Specifically, the Examiner rejected the broad claims on the grounds that the prior art "discloses a tube alignment clamp comprising clamp halves which are drawn together with a bolt and captive nut arrangement." *Id.* However, the Examiner stated he would allow a claim "if rewritten in independent form including all of the base claim and any intervening claims." *Id.* at PL 00067. That is to say, the Examiner noted the broad claims if rewritten to include the narrower limitations added by the dependent claims would be allowable. In response, the patentee deleted the rejected claims and submitted new independent claims 1 and 4, both of which, as amended, include the limitation of a threaded bore. Exhibit D,

---

[2] "[D]ependent claims are presumed to be of narrower scope than the independent claims from which they depend." *Wyeth v. Mylan Pharms., Inc.*, No. 1:07CV91, 2009 U.S. Dist. LEXIS 43800, at *15 (quoting *Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*, 517 F.3d 1364, 1375 (Fed. Cir. 2008)).

10

Amendment at PL 00089-91.  As a result of the claim amendments, the patent issued.

The prosecution history "is of primary significance in understanding the claims." *Markman*, 52 F.3d at 980.  "The purpose of consulting the prosecution history in constructing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'" *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) (quoting *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed. Cir. 1988)); *see also Am. Permahedge Inc. v. Barcana Inc.*, 105 F.3d 1441 (Fed. Cir. 1997) ("The prosecution history of the patent is significant; any disclaimers made during prosecution limit the interpretation of the claims.")

> It is a rule of patent construction consistently observed that a claim in a patent as allowed must be read and interpreted with reference to claims that have been cancelled or rejected, and the claims allowed cannot by construction be read to cover what was thus eliminated from the patent.

*Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 220-21 (1940).  Here, the patentee deleted the claims which the Examiner rejected as obvious in light of the prior art tube alignment tool with a bolt and captive nut arrangement.  The patentee replaced the rejected claims with claims expressly including the limitation of a threaded bore.  Thus, the phrase "one of said clamp members including a threaded bore extending therethrough" cannot be construed to include a bore with a captive nut.  Rather, it is the bore, the hole in the clamp member, which must be threaded and into which the bolt is screwed to join the clamp members in position.

Such construction also follows the axiom that, if possible, "claims should be construed to sustain their validity." *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999).  If the phrase "one of said clamp members including a threaded bore extending therethrough" were construed so broad as to include screwing the bolt into a nut rather than screwing the bolt directly into the bore of the opposing clamp member, then the claims would be invalid as obvious in light of the prior art.  Accordingly, the Court should adopt a claim construction that is consistent with the

11

claim's language and the prosecution history and which does not render the claim invalid.  *Id.*

**PROPOSED CONSTRUCTION**:  Therefore, the portion of any claims reciting "one of said clamp members including a threaded bore extending therethrough," or similar such language, should be construed to mean "one of said clamp members including a threaded bore extending completely through the clamp member, the threads of which clamp member receive and secure the bolt when the clamp members are screwed together, rather than screwing the bolt into a nut adjacent to or inserted in the bore."

**B.     CONSTRUCTION OF CLAIM TERMS "SINGLE" AND "PAIR"**

Throughout the claims, the patent refers to either "a single" object or "a pair" of objects.  Because the constructions of these terms are inter-related and the terms themselves are repeated in multiple claims, they should be construed consistently with one another.  Therefore, this Brief discusses these terms simultaneously.

Claim 1, for example, recites:

> 1.     A boiler wall tube tool comprising a pair of opposed clamp members … each of said clamp members having **a pair of recesses** therein receiving adjacent ends of a pair of boiler wall tubes, said bolt means including **a single bolt** extending centrally through said clamp members and between the pair of boiler wall tubes ….

'500 Pat. at 4:51-5:10 (emphasis added).

Here again, the meaning of the terms "single" and "pair" is "readily apparent," and thus, "claim construction…involves little more than the application of the widely accepted meaning of commonly understood words."  *Phillips*, 415 F.3d at 1314.  Namely, "single" means "only one in number" and "pair" means "two corresponding things."  *See* Merriam-Webster Online Dictionary, *available at* http://www.merriam-webster.com/dictionary/single (last visited Aug. 31, 2010), attached as Exhibit G; *Id.* at http://www.merriam-webster.com/dictionary/pair, attached as

12

Exhibit H.

In *Brunswick Corporation v. U.S.*, the U.S. Court of Federal Claims applied this same definition of "single" during claim construction. 34 Fed. Cl. 532, 564 (Ct. Cl. 1995). In that case, the patent at issue recited "a single electrically resistive layer." The court held that "the word ***'single' indicates that only one*** electrically resistive layer ***is intended***." *Id.*

It is clear that the definite term "single" means only one is intended. Similarly, the equally definite term "pair" means "two corresponding things." In construing the claims, the court "must give meaning to all words in the claims." *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1557 (Fed. Cir. 1995). "Courts can neither broaden nor narrow the claims to give the patentee something different than what he has set forth." *E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988).

**PROPOSED CONSTRUCTION**: Therefore, the Court should construe the term "single" to mean "only one and no more" and the term "pair" to mean "two and no more or less."

## IV.   INDEPENDENT CLAIMS 7 AND 10 ARE "MEANS PLUS FUNCTION" CLAIMS

Two of the independent claims asserted in this lawsuit, claims 7 and 10, do not expressly describe the structure used to join the clamp members together. Rather, these claims only generally reference a "bolt means." Pursuant to governing patent law, these claims are nonetheless to be construed to require the specific structure described in the patent which itself describes only a bolt and threaded bore arrangement. *See* 35 U.S.C. § 112.

Claims 7 and 10, are "means plus function" claims. Means plus function claims are governed by 35 U.S.C. § 112. Pursuant to Section 112, "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof." The scope of such claims, however, is

limited to the "corresponding structure, material, or acts described in the specification and equivalents thereof." *Id.* "[W]hether a claim limitation is in means-plus-function format, is a matter of claim construction and is thus a question of law …." *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1370 (Fed. Cir. 2003).

Claims 7 and 10 recite "means" with the function of "moving the clamp members towards each other for secure clamping engagement":

> 7.   In combination with a boiler tube wall formed by a plurality of closely spaced tubes rigidly connected by webs, a tool for clampingly engaging adjacent ends of a tube from which the connecting webs have been removed and retaining the adjacent tube ends in alignment while being connected by welding, said tool comprising a pair of opposed clamp members with each clamp member including recess means therein to engage adjacent ends of at least one boiler wall tube on opposite sides of a juncture between the adjacent tube ends, **means moving the clamp members towards each other for secure clamping engagement** with only the adjacent ends of the tube for maintaining them in alignment while connecting the ends of the tube by welding, each clamp member including means providing access to the periphery of the juncture between the ends of the tube clamped by the clamp members, **said means moving the clamp members towards each other including bolt means** extending between the tubes in the areas from which the webs have been removed.
>
> 10.   A boiler wall tube tool comprising a pair of opposed clamp members with each clamp member including a pair of longitudinal recesses therein to receive and engage adjacent ends of a pair of boiler wall tubes on opposite sides of a juncture between the adjacent ends, **bolt means moving the clamp members towards each other for secure clamping engagement** of the adjacent ends of a pair of boiler wall tubes for maintaining them in alignment while connecting the ends of the tubes by welding, each clamp member including means providing access to the periphery of the juncture between the adjacent ends of the pairs of tubes clamped by the clamp members, **said bolt means including a single bolt extending centrally through said clamp members** and between the pair of boiler wall tubes at the juncture between adjacent ends of the boiler wall tubes, said means providing access to the periphery of the juncture between the adjacent ends of the tubes including a laterally inwardly extending centrally disposed recess

14

> in each side edge of each clamp member in alignment with the juncture between the adjacent ends of the pair of tubes thereby providing access to a substantial portion of the periphery of the adjacent ends of the pair of tubes both interiorly and exteriorly of the boiler wall formed by the tubes, the headed end of the single bolt engaging the outer clamp member thereby rendering the head of the bolt available for engagement by a wrench exteriorly of the boiler wall formed by the tubes.

'500 Patent 6:8-7:18 (emphasis added).

Here, claims 7 and 10 both use the word "means." "It is well settled that '[a] claim limitation that actually uses the word 'means' invokes a rebuttable presumption that § 112, [paragraph] 6 applies.'" *Apex Inc.,* 325 F.3d at 1371. Further, the claims otherwise fail to recite sufficiently definite structure for performing the function of "moving the clamp members towards each other." Accordingly, claims 7 and 10 are means plus function claims which are limited in scope to the structure described in the patent specification. *See* 35 U.S.C. § 112.

The specification provides in relevant part:

(1) For alignment of a pair of boiler wall tubes (i.e., figures 1 and 2):

- "The clamp bolt includes a head and a threaded portion which is threaded through ***internally threaded bore in clamp member***." (U.S. Patent 4,936,500 at column 3, lines 34-36 (internal drawing references omitted) (emphasis added).)

(2) For alignment of a single boiler wall tube (i.e., figures 3 and 4):

- "Each of the wings are interconnected by bolts having a head at one end and a threaded portion at the other end which is in screw threaded engagement with ***an internally threaded bore in the inner clamp member*** with the shank of the bolt being rotatable in a bore in the wing on the clamp member." ('500 Patent at column 4, lines 6-12 (internal drawing references omitted) (emphasis added).)

Thus, the only structure described in the specification is a bolt threaded into a bore in the opposing clamp member. An element that, again, was of key pertinence to the Patent Office during examination. *See* Exhibit A, Office Action, at PL 00066.

15

Claims 7 and 10 recite "means" for "moving the clamp members towards each other for secure clamping engagement." These claims should be construed as means-plus-function claims limited to the corresponding structure described in the specification. The only means described in the specification is a bolt threaded into a bore in the opposing clamp member. Accordingly, claims 7 and 10 should be construed so as to include this structure.

**PROPOSED CONSTRUCTION:** Therefore, the portion of any claims reciting "bolt means," "means moving the clamp members towards each other for secure clamping engagement," or similar such language, should be construed as limited to bolts that are screwed into a clamp member that includes "a threaded bore extending completely through the clamp member, the threads of which clamp member receive and secure the bolt when the clamp members are screwed together, rather than screwing the bolt into a nut adjacent to or inserted in the bore."

## CONCLUSION

Based on the foregoing, the Court should adopt NAES's constructions of the claim terms of the '500 Patent, specifically:

1. The portion of any claims reciting "one of said clamp members including a threaded bore extending therethrough," or similar such language, should be construed to mean "one of said clamp members including a threaded bore extending completely through the clamp member, the threads of which clamp member receive and secure the bolt when the clamp members are screwed together, rather than screwing the bolt into a nut adjacent to or inserted in the bore."

2. The Court should construe the term "single" to mean "only one and no more" and the term "pair" to mean "two and no more or less."

3. The portion of any claims reciting "bolt means," "means moving the clamp

members towards each other for secure clamping engagement," or similar such language, should be construed as limited to bolts that are screwed into a clamp member that includes "a threaded bore extending completely through the clamp member, the threads of which clamp member receive and secure the bolt when the clamp members are screwed together, rather than screwing the bolt into a nut adjacent to or inserted in the bore."

        s/ Christopher S. Morris
        Christopher S. Morris (WVSB #8004)
        cmorris@baileyglasser.com
        BAILEY & GLASSER, LLP
        209 Capitol Street
        Charleston, West Virginia 25301
        (304) 345-6555

        Jack A. Wheat (*pro hac vice*)
        jwheat@stites.com
        Christina I. Ryan (*pro hac vice*)
        cryan@stites.com
        STITES & HARBISON, PLLC
        400 West Market Street
        Suite 1800
        Louisville, KY  40202-3352
        (502) 587-3400

        Counsel for Defendant, NAES POWER CONTRACTORS, INC

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 1st, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Robert R. Waters, Esq.<br>Jason A. Poling, Esq.<br>WATERS LAW GROUP PLLC<br>633 Seventh Street<br>Huntington, WV  25701<br>rrwaters@waterslawoffice.com<br><br><br><br>*Counsel for Walhonde Tools, Inc.* | Allison L. Carr<br>James A. Walls<br>Richard W. James<br>Ryan Debski<br>SPILMAN THOMAS & BATTLE PLLC<br>48 Donley Street, Suite 800<br>Morgantown, West Virginia  26501<br>acarr@apilmanlaw.com<br>jwalls@spilmanlaw.com<br>rdebski@spilmanlaw.com<br>rjames@spilmanlaw.com<br><br>*Counsel for Wilson Works, Inc.* |
| Robert J. D'Anniballe, Jr.<br>Eric G. Soller<br>PIETRAGALLO GORDON ALFANO BOSIK & RASPANI, LLP<br>3173 Main Street<br>Weirton, West Virginia  26062<br>rjd@Pietragallo.com<br>egs@pietragallo.com<br><br>*Counsel for Minnotte Contracting Corporation* | Alan G. Towner<br>PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP<br>1 Oxford Center, 38th Floor<br>Pittsburgh, PA 15219<br>agt@pietragallo.com<br><br><br><br>*Counsel for Minnotte Contracting Corporation* |
| Henry J. Renk<br>FITZPATRICK, CELLA, HARPER & SCINTO<br>30 Rockefeller Plaza<br>New York, New York  10112<br>Hrenk@fchs.com<br><br>*Counsel for Foster Wheeler Zack, Inc.* | Carl L. Fletcher, Jr.<br>BOWLES, RICE, MCDAVID, GRAFF & LOVE<br>600 Quarrier St.<br>Charleston, West Virginia  25325<br>cfletcher@bowlesrice.com<br><br>*Counsel for Foster Wheeler Zack, Inc.* |
| M. David Griffith, Jr.<br>John C. Palmer, IV<br>ROBINSON & MCELWEE, PLLC – CHARLESTON<br>P.O. Box 1791<br>Charleston, West Virginia  25326<br>mdg@ramlaw.com<br>jcp@ramlaw.com<br><br><br>*Counsel for Day & Zimmermann NPS, Inc.* | Eric S. Marzluf<br>James J. Kozuch<br>CAESAR RIVISE BERNSTEIN COHEN & POLOTILOW LTD<br>1635 Market Street, 11th Floor<br>Philadelphia, Pennsylvania  19103-2212<br>esmarzluf@crbcp.com<br>jjkozuch@crbcp.com<br><br>*Counsel for Day & Zimmermann NPS, Inc.* |

        s/ Christopher S. Morris
        Christopher S. Morris (WVSB #8004)
        Attorney for NAES Power Contractors, Inc.
        Bailey & Glasser, LLP
        209 Capitol Street
        Charleston, West Virginia  25301
        (304) 345-6555
        (304) 342-1110
        cmorris@baileyglasser.com