IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

WALHONDE TOOLS, INC.,

    Plaintiff,

v.    CIVIL ACTION NO. 1:09-CV-00048

WILSON WORKS, INC.,
a West Virginia Corporation; and
NORTHCO CORP.,
a West Virginia Corporation; and
NAES POWER CONTRACTORS, INC.,
successor by merger to American Boiler & Chimney
Company, a Washington Corporation; and
MINNOTTE CONTRACTING CORPORATION,
a Pennsylvania Corporation; and
FOSTER WHEELER ZACK, INC.,
a Delaware Corporation; and
DAY & ZIMMERMANN NPS, INC.,
a Delaware Corporation,

    Defendants,

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STRIKE
PLAINTIFF'S MARKMAN RESPONSE BRIEFS**

Comes now, Plaintiff Walhonde Tools, Inc (hereafter "Walhonde" or "Plaintiff"), by counsel, to file herein Plaintiff's Response to a Motion (DE 143) by some of the Defendants in this matter seeking to strike the Plaintiff's three Markman Response Briefs, filed in response to Markman Briefs filed by three of the Defendants.

The Motion should be denied as it is clear from the Scheduling Order and the Briefs themselves that the Plaintiff's three Response Brief submissions are exactly that which is called for in the Scheduling Order, and there is no compelling reason to allow the Defendants to change

the rules after the fact to the detriment of the Plaintiff.  Further basis for this conclusion is set forth below.

### I.   THE PLAINTIFF COMPLIED WITH THE SCHEDULING ORDER BY FILING RESPONSE BRIEFS TO OPPOSE CLAIM CONSTRUCTIONS OFFERED BY THE DEFENDANTS AND POINTING OUT WHY THOSE CONSTRUCTIONS ARE LEGALLY DEFICIENT

By the filing of the present Motion, the Defendants are seeking to re-write the Court's Scheduling Order to include new requirements for Response Briefs that were never adopted and are only now being suggested after-the-fact by the Defendants. The structure that was adopted by the Court in the September 18, 2009 Scheduling Order (DE 76) was endorsed and recommended to the Court by all of the parties to this matter after extensive telephone discussions among counsel.  All of the Defendants agreed that the structure to be adopted with respect to claim construction in this matter was that any party could set forth any argument that one or more terms should have a special meaning or construction in a Markman Brief to be submitted on September 1, 2010, along with whatever legal arguments the party wished to advance in support of the constructions.  Thereafter, if any other party wished to oppose the claim constructions offered on September 1 by other parties, the opposing party may file a Response Brief by September 15 along with any appropriate legal argument and authorities in support of that party's opposing viewpoint.  It now appears, that the Defendants, in retrospect, have decided they do not like the structure previously agreed to and would like to impose greater restrictions on the Response briefing.  The reason for the Defendants' change of position appears to be the fact that the Plaintiff is the only party to file actual Response Briefs that address the deficiencies of the construction offerings of others.

The primary argument advanced by the Defendants in the present motion is that by choosing not to identify a set of terms to be specially construed in a Markman Brief on September 1, a party is estopped from filing a Response Brief to take exception to any other term construction that other parties have proposed. The assertion is nonsensical and not supported by the Scheduling Order entered by the Court. Regardless of whether or not a party chooses to identify terms that it believes should be construed a certain way, the party certainly has the right under the Scheduling Order entered in this case to oppose other constructions of other terms set forth by the other parties. At no time, was there ever a pre-requisite that in order to respond in opposition to a party's constructions, the opposing party must have set forth other terms for construction.

The Scheduling Order was adopted by this Court on September 18, 2009 and it included absolutely no language limiting the filing of a Response Brief to certain circumstances, as the Defendants now argue. *See Scheduling Order, DE 76*. Moreover, the new limitations being proposed in the Defendants' Motion are nonsensical on their face. Under the structure that was adopted, the parties did not meet and confer to determine a joint set of terms that all parties would offer constructions for and file as a joint matrix. Rather, under the structure adopted in the Scheduling Order, any party could argue that one or more terms should have a special construction separate from the ordinary and customary usage of the term, and if a party chooses to make such an argument, that argument should have been set forth in a Markman brief on September 1. *Id.* Accordingly, under this structure, each party could end up identifying separate terms that the other parties did not identify. Conversely, it could also be the case that two or more parties could choose the same term that they believe needs to be construed and offer conflicting constructions while the other parties are silent as to that particular term.

3

Alternatively, it could also be the case that two parties happen to agree that a particular term needs to be construed and the two parties offer similar or identical constructions for that term while yet other parties either offer something totally different or do not identify that term at all. Since the structure adopted in this case provided no mechanism for the parties to agree in advance on a specific set of terms to be construed, an infinite number of possibilities existed. Seven separate parties were free to identify terms that should be given a special construction, and set that construction forth for the first time on September 1. However, there was no requirement that all parties must identify terms that they believe need special constructions. A party may feel that no special constructions are necessary.

On September 1, three parties set forth Markman briefs arguing that certain terms should be construed in particular ways. Defendant NAES set forth a brief that argued for four specific terms to be specially construed. Defendant Minnotte argued for much more extensive special constructions, while Wilson Works literally argued that every word of every claim needed to be specially construed. The other parties – including the Plaintiff – did not set forth any terms that should be specially construed. There was absolutely no requirement that any party had to set forth a brief on September 1 identifying any particular term, and it was a perfectly legitimate choice for a party to conclude that no terms are confusing such that a construction by the Court is necessary. This is the choice made by the Plaintiff. The Defendants now make the unsupported argument that the Scheduling Order prohibits a party from responding in opposition to another party unless they set forth terms of their own for construction, and the argument has no merit as the Scheduling Order sets forth no such requirement.

It is a long settled canon of patent law that "words and phrases in a patent claim are generally given their ordinary and customary meaning." *U.S. Surgical Corp. v. Ethicon, Inc.*,

102 F.3d 1554, 1568 (Fed. Cir. 1997) & *Biotec Biologische Naturverpackungen Gmbh & Co. KG v. Biocorp, Inc*., 249 F.3d 1341, 1349 (Fed. Cir. 2001). If the meaning of a term is clear on its face, the discussion ends. If a term is clear on its face, there is nothing to construe. Claim terms should be construed according to their ordinary and customary meaning. It is the Plaintiff's contention that the words and phrases in the '500 patent are clear and evident on their face such that no special meaning or special claim construction by the Court is necessary. In each of the claim construction Response Briefs filed by the Plaintiff, this position is clearly and consistently stated. *DE 140, pg. 14; DE 141, Appendix A; DE 142, pg. 12*. As this Court has previously noted, "the determination of a special meaning of a claim is only necessary when the scope is not otherwise evident". *Wyeth v. Mylan, Inc*,. No.: 1:07-cv-91, 2009 US District. Lexis 43800, at *7 (N.D. W. Va. May 22, 2009).

    The Defendants appear to be in conflict with each other regarding basic claim construction principles. Defendant NAES argued that four specific terms from the '500 patent should be given specific constructions, and while the Plaintiff takes exception to those constructions, it appears at least that NAES understands that the purpose of claim construction is only to construe those terms that are not otherwise clear on their face in the context of the patent. Defendant Wilson Works, however, took a radically different approach that every single word of every single claim of the '500 patent must be given a specialized construction in a claim construction proceeding. *DE 133*

    In the event that the parties and the Court had intended that every party must set forth an initial brief identifying a specific construction for every single word and phrase of the patent claims, such a structure would have been specifically identified in the Scheduling Order. *Id.* In addition, the Plaintiff would have never recommended such an absurd Markman structure.

Rather, the structure adopted here is one wherein a party may (or may not) offer specific constructions of specific terms that it contends need to be construed by the Court. The argument that a party may not file a Response Brief in opposition to other parties unless the opposer had first asserted that other terms need to be construed is wholly absent from the Scheduling Order and represents a recent afterthought by some of the Defendants who now wish for a different structure.  In the Motion, the Defendants complain that the structure does not afford them a Reply Brief to counter the opposing Response Briefs.  Although this is true, this is precisely the structure that all of the parties, including the Defendants, agreed to.  Any party can offer a special construction for a term or phrase asking that it be given something other than its ordinary and customary meaning, and then any other party can file a Response Brief in opposition.

      The Defendants' present motion also complains that the Plaintiff included sections in its three separate Response Briefs in which it identified legal support (case law) and a factual background that discussed the patent. *Motion, para 29-31*.  Yet, there is absolutely nothing in the Scheduling Order adopted for this case that limits, prevents or discourages factual and legal arguments in either the opening or response briefs.  In fact, if an opposition response brief is going to be effective in persuading the Court that a particular construction is incorrect, the opposing party must be able to support its opposition opinion with citations to the patent specification and to established legal principles of claim construction.  This is precisely what the Plaintiff did.  The current Motion makes the absurd argument, without support, that legal references are not appropriate in a Response Brief. *Id.*

      A discussion of claim construction legal principles is particularly important in this particular case when a party sets forth a claim construction that violates generally accepted claim construction principles.  The notion that a Response Brief should be devoid of legal and factual

arguments is absurd and there is certainly no suggestion of any such limitation anywhere in the Scheduling Order.

## II. PLAINTIFF'S THREE RESPONSE BRIEFS ARE LIMITED TO SPECIFIC REBUTTAL ARGUMENTS FOR THE SPECIFIC CONSTRUCTIONS OFFERED BY EACH DEFENDANT

Because each of the three Defendant briefs submitted on September 1 took radically different approaches and set forth completely different – often conflicting – arguments from each other, the Plaintiff needed to set forth three separate Response Briefs. The current Motion asserts that the Plaintiff's Response Briefs are improper because in the cases in which the Plaintiff opposes a Defendant offering, the Plaintiff explains why and states a specific alternative construction, i.e., the plain and ordinary meaning of the terms be used as the proper construction. *See, Motion, para 40-43*. However, this is precisely the purpose of a Response Brief. The Plaintiff set forth its opposing construction and argument for the specific term proposed by the Defendant, and argued for construing the terms in keeping with the plain meaning of the words in the context of the patent. The arguments and alternatives set forth by the Plaintiff in each Response Brief are limited strictly to the terms identified in each Defendant Brief and the support for each rebuttal is spelled out thoroughly. The Defendants suggest that the Plaintiff exceeded the scope of rebuttal, but the Defendants failed to identify even a single example in which the Plaintiff offered a construction argument for any word or phrase that was not specifically in opposition to the Defendants construction of the identical word or phrase.

Turning to specifics, Defendant NAES, in its Markman brief idenitifed four terms and phrases that it believes should be construed by the Court and the legal and factual basis for the same. In response, the scope of Plaintiff's response was properly limited to addressing each of

7

those NAES arguments for each of those terms, and argued nothing more. The Plaintiff made no argument in its NAES response concerning other terms and phrases aside from those NAES had identified for construction. It is particularly telling that in the present Motion, the Defendants wholly failed to identify even a single instance where the Plaintiff exceeded the proper scope of the Response Brief by proposing claim terms in excess to that which were set forth by NAES.

Minnotte and Wilson Works set forth claim construction charts in which they essentially identify almost every word of every claim as needing construction either alone or in combination with other words or phrases. The Plaintiff provided a response brief to Minnotte and a separate response brief to Wilson Works because the constructions offered by those two parties for the exact same phrase varied significantly. In the Response Briefs, Plaintiff even adopted the same brief structure chosen by the respective defendant, i.e. -  a chart in which the Plaintiff set forth a responsive detailed three column chart showing: 1) the term or phrase construed by the Defendant; 2) the Minnotte (or Wilson) construction and its supporting arguments, and; 3) the Plaintiff's response and supporting arguments and citations.

Indeed, with respect to the Minnotte response, the Plaintiff found that in many circumstances, the Plaintiff actually agreed with Minnotte's proposed construction. *DE 141, Appendix.* In these situations, the Plaintiff simply noted in its Response Brief that it was in agreement with the Minotte construction. *Id.* In contrast, the Wilson Works' construction featured generally un-supported and often incomprehensable constructions that have no support in the specification or the law, and which are easily debunked. It is important to note, however, that in each case, the Plaintiff specifically responded to **only** the phrase combinations offered by the Defendant. In no case, did the Plaintiff offer new combinations of words for constructions along with arguments for something that was not addressed by the particular Defendant to which

it was responding. The current Motion makes the assertion that the Plaintiff exceeded the scope of the Response Brief but fails to point to even one specific example in which the Plaintiff offered a construction for a term that had not been argued by that defendant. *See Motion, para 35*. In fact, the best that these Defendants can do in the Motion is to assert that a discussion of the patent background and core legal principles constitutes an improper scope for a Response Brief. *Id. at 29-31*. Defendants' argument simply has no merit.

The Motion correctly notes that the Plaintiff's position is that the terms of the patent should be given their plain, ordinary and customary meaning. *Motion, para 33*. Then, the Defendants state that in order to assert that the plain meaning of a term should be used rather than what the Defendants propose, the Plaintiff had to state that principle of law in an initial brief, rather that saying so in a Response Brief. To do so, however, the Plaintiff would have had to be able to predict in advance what terms one or more the Defendants would seek to impose a bizarre or non-ordinary construction for, and then state in advance that the ordinary and customary meaning of that phrase should be used instead. Clearly, the only interpretation of the Scheduling Order that makes sense is that **after** a party places a particular term in dispute and asserts that the particular term meaning should be altered from its ordinary and customary meaning, any party who opposes that view should state its objection and identify an argument to the contrary in a response brief. That is precisely what the Plaintiff did, and that is what the parties agreed to when this Scheduling Order was put together in 2009. The simple fact the Defendants now regret that we did not build in a reply brief opportunity does not merit reading in new definitions of what constitutes a proper response brief.[1]

---

[1] It is also important to note that none of the current movants have sought Leave to file a Reply Brief, or contacted the Plaintiff to suggest that it believed that something in the Plaintiff's Response should entitle that party to do so.

9

### III. ALTHOUGH PLAINTIFF FILED ITS RESPONSIVE BRIEFS A FEW HOURS BEYOND THE MIDNIGHT DEADLINE, PLAINTIFF HAD GOOD CAUSE FOR THE LATE FILING AND DEFENDANTS WERE NOT PREJUDICED IN ANY WAY

The only assertion advanced by the Defendants in the current Motion that is accurate is the assertion that the Plaintiff's three Response Briefs were filed slightly late, arriving through the ECF system in the early morning of September 16, just past the midnight deadline of September 15. The lateness is *de minimus*, and occurred due to an unexpected computer issue that the Plaintiff experienced during the finalizing of the three briefs which caused the briefs to have to be re-created during the night of September 15. This incident is detailed in an affidavit set forth as an attachment to this response as *Exhibit A, Affidavit of Cheryl R. Winn.*

As pointed out earlier, three separate Defendants had set forth three separate and widely differing Markman positions on September 1. Accordingly, the Plaintiff's responses had to be tailored to each Defendant's position, requiring three separate and extensive briefs. Moreover, the three Defendants in question set forth entirely different terms for construction, and two of them – Minnotte and Wilson Works – set forth constructions that greatly conflict with each other. In fact, the Plaintiff found that it agreed with many of the specific constructions Minnotte proposed, while Wilson Works generally had unsupportable positions that conflicted with the Minnotte and Plaintiff position. Accordingly, in terms of Response Briefs, the Plaintiff had three to prepare with only portions of the general patent specification background and claim construction legal principles being applicable to all three. Since the Minnotte and Wilson Works constructions were so extensive, a specific Appendix, over 30 pages in length, was prepared for each that compared and contrasted the respective positions of the Plaintiff and Defendant along with appropriate identification of citation from the patent specification.

As set forth in the attached affidavit of Cheryl Winn, an attorney with the Plaintiff's legal team, the Response Briefs became corrupted and damaged through a computer malfunctioning on September 15, such that they each had to be re-typed and extensively repaired. *Exhibit A, para 4*. This event was sudden and unexpected. *Id.* Due to the size of the documents in question, the re-producing of the Briefs and Appendices took many hours of time, extending slightly beyond midnight. *Id., para 5*. As each document was repaired, it was promptly filed electronically in the early morning hours of September 16, while each of the Defendant counsel (presumably) rested comfortably in their beds. *Id.* In any event, the briefs were re-created, filed and delivered via the ECF system to the Defendants prior to the start of business hours on September 16. Indeed, unless the Defendants were waiting at midnight on September 15 to review the briefs, they received the briefs at the same time they would have had the briefs been filed a few hours earlier at midnight.

Given that the lateness was both *de minimus* and caused by an unexpected catastrophe, the Plaintiff respectfully asks that the technical non-compliance with the filing deadline be excused. Although the Defendants point out the technical violation in their current Motion, they are able to assert no prejudice to their case caused by the ECF filing occurring in the early morning hours of September 16. The Motion does not even attempt to allege any type of prejudice by this late filing. Moreover, given that the Defendants' Markman Briefs also included an assortment of technical deficiencies as set forth in the next section, they should not be allowed to reap a windfall due to *de minimus* lateness, precipitated by an unexpected technical difficulty experienced by the Plaintiff. The draconian relief of striking Plaintiff's Response Briefs should

11

not be granted, particularly in light of the request being made by Defendants with unclean hands with respect to Rules compliance.[2]

### IV. PLAINTIFF'S RESPONSE BRIEFS PROVIDE THE ONLY PROPER RESPONSES THAT COMPARE AND CONTRAST COMPETING ARGUMENTS OF THE PARTIES

The current motion by the Defendants collectively seeks to strike the Plaintiff's three Response Briefs in which the legal errors and inconsistencies of opposing briefs are discussed and contrasted. Curiously, the Plaintiff's brief are the ONLY briefs that actually constitute a responsive pleading. The Motion in paragraph 6 states that Defendants Minnotte and Wilson Works filed Response Briefs, but a closer look at these alleged Response Briefs (DE 138 & DE 139) shows they are not Response Briefs at all. Despite the fact that Minnotte and Wilson Works have taken conflicting positions on a variety of claim terms, these alleged "Response Briefs" do not address these conflicts at all. As such, the Plaintiff's briefs are the only Response Briefs that actually provided a response in keeping with the intent and purpose of a response brief, while the Minnotte and Wilson Works responses address no claim conflicts at all.

For many of the construction offerings, the Plaintiff's response that the plain meaning of the term should be used is consistent with the Minnotte construction, and at variance with that of Wilson Works. In response to the construction offerings of each Defendant, the Plaintiff consistently stated that it believed the term should be given its plain and ordinary meaning. For example, the following chart (on the next page) contrasts the construction offerings of a particular phrase from Claim 1 of the patent, and shows the Plaintiff's response along with the two inconsistent construction offerings of defendants Minnotte and Wilson Works:

---

[2] The Motion cites the case of *Coupled Products, LLC v. Nobel Automotive Mexico, LLC*, No. 09-cv-0323, WL 2035829 (W.D. La. 2010) for support, but that case is clearly off point as it involved a deliberate violation of a very specific Scheduling Order, and wherein a specified group of claim terms had been agreed upon in advance.

claim term: **"one of said clamp members including a threaded bore extending therethrough"**

| Minnotte Construction | Plaintiff's Response to Minnotte | Wilson Works' Claim Terms |
|---|---|---|
| "...internally threaded bore 64 [sic, the correct element number is 66 as shown in Fig. 2] in clamp member 24 (col. 3, lines 34-35)<br><br>Based on the plain meaning and specification, this term should be interpreted as *a threaded bore that extends through the clamp member.* | The Plaintiff agrees that based on the plain meaning and specification, this term should be interpreted as:<br><br>*a threaded bore that extends through the clamp member.* | One of the clamp members has a hole with its boundary defined by threading, the hole and its threading cut into the clamp member and extending from one side to the other. |

The Response Briefs filed by the Plaintiff are the only documents that address and contrast differences in construction, and instances in which a party objects to a proposed construction that is at variance with the ordinary and customary usage of the term. As such, the Plaintiff's have kept with the spirit and intent of the Markman Briefing Schedule and provided information and argument upon which a decision can be rendered, in contrast to the Defendant Briefs that are not properly responsive, as required.

V. **THE DEFENDANTS MOTION SHOULD ALSO BE DENIED AS THE DEFENDANTS THEMSELVES HAVE BEEN NON-COMPLIANT**

The collective Motion by the Defendants also claims falsely that all parties, including the Plaintiff were obligated to file a Markman Brief, and that all instances of "means plus" claim language must be addressed. *See, Motion, para 2, 37 and 38*. Yet, the Motion fails to point out

that Defendant NAES likewise did not address all instances of "means plus" claiming in its brief. NAES only offered constructions for one of the many "means plus" claims in its brief.[3] Moreover, NAES is a party to the current Motion wherein the Plaintiff is criticized for the same thing, and NAES apparently does not see the hypocrisy in that position.

The Minnotte Markman Brief is also totally non-compliant with the Scheduling Order because it is not a Markman Brief at all. Rather, Minnotte set forth a two-page introduction that includes no legal authorities or discussion whatsoever, and an Appendix that proposes constructions, with little or no discussion of the basis for that construction. That hardly qualifies as a Markman Brief. The Wilson Works Markman Brief is much worse, in that nearly the entire Brief is dedicated to various invalidity arguments Wilson Works wishes to advance. That would be fine in a Motion for Summary Judgment due to Invalidity, but it has no place in Markman briefing. As such, they have failed to comply with the spirit of a Markman proceeding as well as the Scheduling Order itself.

The Plaintiff has noted, where appropriate, in its Response Briefs where particular Defendants did not fully comply with the Rules or offered a half-baked or misplaced argument. However, the Plaintiff did not move to Strike the opposing parties briefs due to non-compliance with the Scheduling Order or Markman standards, as the Plaintiff believes that the Court's time and focus is better directed to actual claim construction rather than petty gamesmanship wherein a party seeks to gain an advantage over another by seeking to strike a brief due to a technicality. The Plaintiff does believe, however, that the parties behind the current motion are not operating with clean hands when it comes to strict compliance, and that the Court should consider this factor in evaluating the merits of the Motion. The fact that some of the Defendants feel the need

---

[3] NAES also argues that a second claim term should be interpreted as a "means plus" term, although the Plaintiffs believe it should not be, as further discussed in the Briefs.

14

to seek to change the briefing structure after the fact or seek advantage of a *de minimus* late filing due to technical difficulties speaks volumes to the lack of confidence the parties have in the strength of their Markman arguments.

The current motion should be summarily denied as it is inappropriate to seek to create after-the-fact new pre-requisites for a Response Brief, particularly for the benefit of parties who themselves have not fully complied with the Markman Briefing requirements or the new rules they would like to impose.

## CONCLUSION

For all of the reasons set forth above, the Plaintiff asks that the Motion to Strike be denied.

Respectfully submitted,

s/ *Robert R. Waters/*

Robert R. Waters, Esq.
rrwaters@waterslawoffice.com
Jason A. Poling, Esq.
japoling@waterslawoffice.com
WATERS LAW GROUP, PLLC
633 Seventh Street
Huntington, West Virginia 25701
Telephone: (304) 522-6658
Facsimile: (304) 522-7722

*Counsel for Plaintiff Walhonde Tools, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

WALHONDE TOOLS, INC.,

    Plaintiff,
v.                                        CIVIL ACTION NO. 1:09-CV-00048

WILSON WORKS, INC.,
a West Virginia Corporation; and
NORTHCO CORP.,
a West Virginia Corporation; and
NAES POWER CONTRACTORS, INC.,
successor by merger to American Boiler & Chimney
Company, a Washington Corporation; and
MINNOTTE CONTRACTING CORPORATION,
a Pennsylvania Corporation; and
FOSTER WHEELER ZACK, INC.,
a Delaware Corporation; and
DAY & ZIMMERMANN NPS, INC.,
a Delaware Corporation,

    Defendants.

## CERTIFICATE OF SERVICE

    I hereby certify that on this the ___8th___ day of October, 2010, I served the foregoing PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S MARKMAN RESPONSE BRIEFS by filing the same using the Court's CM/ECF document filing system.

### SERVICE LIST

James A. Walls
Richard W. James
Ryan Debski
SPILMAN THOMAS & BATTLE, PLLC
48 Donley Street, Suite 800

16

Morgantown, West Virginia 26501
jwalls@spilmanlaw.com
rdebski@spilmanlaw.com
rjames@spilmanlaw.com
*Counsel for Wilson Works, Inc.*

Christopher S. Morris
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, West Virginia 25301
cmorris@baileyglasser.com
*Counsel for NAES Power Contractors, Inc.*

Jack A. Wheat
Christina I. Ryan
STITES & HARBISON, PLLC
400 West Market Street
Suite 1800
Louisville, Kentucky 40202-3352
jwheat@stites.com
cryan@stites.com
*Counsel for NAES Power Contractors, Inc.*

Robert J. D'Anniballe, Jr.
PIETRAGALLO GORDON ALFANO BOSIK & RASPANI, LLP
3183 Main Street,
Weirton, West Virginia  26062
rjd@Pietragallo.com
*Counsel for Minnotte Contracting Corporation*

Carl L. Fletcher, Jr.
BOWLES RICE MCDAVID GRAFF & LOVE, LLP
600 Quarrier St.
P.O. Box 1386
Charleston, West Virginia 25325
*Counsel for Foster Wheeler Zack, Inc.*

Henry J. Renk
FITZPATRICK, CELLA, HARPER & SCINTO
30 Rockefeller Plaza
New York, New York 10112
Hrenk@fchs.com
*Counsel for Foster Wheeler Zack, Inc.*

John C. Palmer, IV
ROBINSON & MCELWEE, PLLC – CHARLESTON

P.O. Box 1891
Charleston, West Virginia 25326
jcp@ramlaw.com
*Counsel for Day & Zimmermann NPS, Inc.*

Eric S. Marzluf
James J. Kozuch
1635 Market Street, 11th Floor
Philadelphia, Pennsylvania 19103-2212
esmarzluf@crbcp.com
jjkozuch@crbcp.com
*Counsel for Day & Zimmermann NPS, Inc.*

Northco Corp.
P.O. Box 2100
Morgantown, West Virginia 26502

                                                *s/ Robert R. Waters /*
                                                _____
                                                Robert R. Waters, Esq.